Marie LIENEKE, Respondent,

v.

EVANGELICAL DEACONESS HOSPITAL,
Employer, et al., Defendants,

M. E. Morris, State Treasurer and Custodian
of the Second Injury Fund, Appellant.

No. 52567.

Supreme Court of Missouri,
Division No. 2.

Sept. 11, 1967.

Quinn & Quinn, William B. Quinn, Julia M. Quinn, Robert L. Weise and Morris B. Kessler, St. Louis, for respondent.

Norman H. Anderson, Atty. Gen., O. Hampton Stevens, Asst. Atty. Gen., Jefferson City, for appellant.

PRITCHARD, Commissioner.

On behalf of appellant the Attorney General contends that an award of the Industrial Commission to respondent from the Second Injury Fund (§ 287.220, RSMo 1959, V.A.M.S.) is "clearly contrary to the overwhelming weight of the evidence." The appellant, State Treasurer and Custo-

dian of the Second Injury Fund, is a party and this court has appellate jurisdiction. Grant v. Neal, Mo., 381 S.W.2d 838.

It is argued that respondent when she suffered an accident in which she broke her left wrist on January 17, 1963, was already totally disabled from progressive degenerative arthritis of the right hip resulting from an accident on June 22, 1959. The evidence, says appellant, demonstrates conclusively that respondent was totally disabled prior to the last accident, and therefore the Second Injury Fund cannot be held liable for compensation. The final award from that fund, from which the appeal was taken to the Circuit Court, which affirmed, was for 238.75 weeks' compensation at $38.01 per week, or $9,074.89, and $22.81 per week for the remainder of respondent's life.

Respondent's motion to dismiss the appeal for appellant's failure to comply with the rules on preparation of briefs is overruled. While there are deficiencies in that the brief does not set forth a complete statement of facts, in the argument portion thereof sufficient facts, with transcript references, are set forth so that the issue may be determined. This review is limited to a determination of whether the finding of the Industrial Commission could reasonably have been made and is supported by competent and substantial evidence, and this court may set aside such finding only if it is clearly contrary to the overwhelming weight of the evidence. § 287.490, Subd. 1, RSMo 1959, V.A.M.S.; Conley v. Meyers, Mo., 304 S.W.2d 9, 10[2].

Respondent began working for the Evangelical Deaconess Hospital on March 27, 1950, as a nurses' aid. Her duties were bathing, feeding and caring for patients, making beds, cleaning rooms and running errands, all of which required her to be on her feet 8 hours a day for a five-day week, alternating shifts. After four years she was assigned the easier work of a ward clerk (making menus and daily reports for personnel records, requisitioning supplies, etc.), and while she was performing that duty she slipped and injured her hip on a bannister on June 22, 1959. She was given medical treatment, lost a few days from work but continued as a ward clerk. She was x-rayed, saw doctors, and there was prescribed for her heating pads and hot baths, aspirin and bufferin, as she kept working. The condition of her hip worsened, and she saw a Dr. Scheer on June 20, 1960, who treated her with cortisone and medications, and had further x-rays taken. She was re-examined by Dr. Scheer in March, 1961 and January, 1962. Until January 15, 1963, respondent was having "an awful lot" of pain in her hip. Dr. Scheer told her to go ahead and try to work, take a day or two off now and then, and keep up with the medications. She lost about 2½ days' work when first injured; and from October 23, 1959 through May 2, 1960 she was absent from work to be with her invalid mother; her hip condition caused an absence from work from June 27, 1960 to July 11, 1960; from July 25 through August 18, 1960; October 19 through October 22, 1960; on December 23, 1960; February 27 through March 5, 1961; April 4 through April 8, 1961; August 2 through September 10, 1961; October 11, December 15, 30, and 31, 1961; January 20 through January 24, 1962; February 25, and May 1 through May 3, 1962; June 28 through July 1, 1962; September 5 through September 23, 1962; October 25 and 26, and November 13 through November 17, 1962; December 4, 5, and 22, 1962; and after January 17, 1963, the date of her last injury.

After the first injury, respondent had persistent pain and difficulty in getting up and down, and could not completely squat down. In May, 1962, respondent was reassigned the job of nurses' aid after the hospital eliminated ward clerk jobs. She was later, before October 2, 1962, assigned as a nurses' aid to a group nursing section where the critically sick and surgical patients are cared for. In this work she limped slightly and experienced pain in her

right hip; she could not get down on her knees or reach up, but she was on her feet helping to bathe, turn and feed patients, make beds, run errands, answer the telephone, walking patients, and getting them in and out of bed. It was a difficult job, physically and mentally strenuous. There were many emergencies requiring fast action. Nurse Bess Polhemus, employed privately at the Deaconess Hospital since 1953, had been acquainted with respondent's work in group nursing since 1961, when respondent was under the supervision of Nurse Jean Crake who in turn was in the charge of Deaconess Sister Hulda Weise. Nurse Polhemus testified that respondent performed the duties assigned to her in a cheerful and willing manner, and there was nothing to indicate that she wasn't able to move as rapidly as the nurse wanted her to; she had no occasion to make complaint concerning respondent's work or activities. There was nothing about respondent's limp which was in any way disabling or interfering with her work.

Nurse Jean Crake testified that from 1959 until 1963 she worked a part of the time around respondent when she was a ward clerk and in group nursing; that she walked with a limp occasionally, and would be on her feet most of the time. Immediately before January, 1963, considering respondent's physical condition, Nurse Crake would have hired her as a nurses' aid; she kept right up with the rest of them; she never performed her work in such a manner as to endanger a patient; her mobility was about the same from 1960 up to January, 1963—she moved very well; and she never made any complaint about respondent.

The second injury happened while respondent was on duty at the hospital when she tripped and fell from an elevator which did not level with the floor. The diagnosis was: "Fracture lower end of radius, left; contusion right shoulder; contusion right knee, complicated with Drug rash, old arthritis right hip, causing a flare-up of condition of this hip," for which respondent was hospitalized from January 17 through February 2, 1963. She had whirlpool and active exercise therapy of the left hand from May until August 13, 1963, but the finding was that she could not use her hand functionally any better than before treatment was begun. Her hand got worse, and she did not return to any employment, and she was advised not to continue work. Her employment was terminated June 19, 1963, with this entry: "Nurses' aid unable to work at the level expected because of poor health. Would not re-employ." The x-rays taken on the date of the second injury showed impaction of the radius and a reversal of the angle of the wrist to the radial side of the hand rather than the ulnar or normal side. The fracture is known as a Colles fracture, and a derangement of the carpal bones of the left hand, the deformity being a permanent condition.

On January 22, 1962, respondent had a permanent partial disability of 50% of the lower extremity at the right hip, the condition of producing the disability being progressive, according to Dr. Stephens. An arteriosclerosis and hypertension condition for which respondent was hospitalized in 1958 would not have prevented her being employed. On October 22, 1963, she was permanently partially disabled 35% of the left hand at the wrist, and 65% of the right hip, a combined permanent partial disability of 55% of the body as a whole. In January, 1964, it was his opinion that respondent was permanently totally disabled. The wrist injury increased the symptoms in her right hip and added to the total sum of disability.

Appellant relies upon respondent's testimony that before January, 1963, her hip was very bad; she could not squat and was unable to put on her shoes and stockings; that for long periods of time she was off work; that after her hip accident she could not be a nurses' aid, the work was harder than that of a ward clerk for which she could not perform all her duties such

as walking a lot. As long as she was in bed and rested, her hip did not bother her. She did the job as ward clerk as best she could and took a day off from time to time to rest and take medication. Appellant also relies upon Dr. Stephens' testimony that if respondent had just the hip condition and the (previously existing) cardiovascular disease, and not the wrist condition, she would not have been able to be employed. Further relied upon is the testimony of Dr. Bert Klein. Both of these doctors were respondent's witnesses. Dr. Klein testified that he hospitalized respondent in 1958 for an arteriosclerosis disease which had existed approximately three years. He repeatedly advised her to quit working since 1958, that she rest and not seek employment and that employment might be detrimental to her. He felt that her cardiovascular condition was a permanent disability and that she was not able to carry on any type of employment.

Two of respondent's superiors testified for appellant that she was not able to do her work since the injury to her hip. Sister Hulda Weise, a Deaconess nurse (director of interservice education at Deaconess Hospital), testified that prior to January, 1963, she observed that respondent had difficulty in walking and would complain of pain in her hip; she became "more slow in her gait"; she would have to sit more; her breathing was a little fast and labored; she didn't do the full capacity of a nurses' aid in 1963; she walked with a sort of limp; if an applicant came in with the condition in which she observed respondent, she would not employ her as a ward clerk which would take a lot of walking; and that respondent was not capable of performing the duties of either a nurses' aid or a ward clerk before the injury to her wrist. Jane Thompson, a director of nursing service at the hospital, testified that respondent limped, walked very slowly, and did not perform the duties required of her job either as a nurses' aid or as a ward clerk. On cross-examination she could not say that there were many duties and functions in both these jobs which respondent was able to perform up to January 16, 1963; and that it practically amounted to a charitable contribution that the Deaconess Hospital made to respondent from 1959 until she terminated her employment.

For appellant, Dr. Carl Fellhauer testified in conclusion that respondent's arteriosclerosis and hypertension were in themselves disabling to the extent that she should not have been working even prior to the fracture of the wrist; and prior to 1963 she could not have performed the duties required of her because of her physical condition.

■ It is apparent in comparing the statements in appellant's brief with all of the facts and conflicting testimony in the record that he has failed to accord respondent the benefit of the rule that on review of a Workmen's Compensation case the evidence, together with all the reasonable inferences to be drawn therefrom, will be viewed in its light most favorable to support the finding and award of the Industrial Commission. Kammeyer v. Board of Education, Mo.App., 393 S.W.2d 122; Dixon v. Art Bunker Motors, Inc., Mo. App., 387 S.W.2d 199. Appellant cites four Oklahoma cases, but none of them aids him on this record, although they did have the issue of whether a prior injury produced total permanent disability so as to make the Special Indemnity Fund not liable. In Special Indemnity Fund v. Prewitt, 201 Okl. 308, 205 P.2d 306, 309, the award was vacated because the State Industrial Commission did not find that the prior injury produced only partially permanent disability (a jurisdictional fact to be found in that state)—"However, this fact, necessary to the power of the Commission to enter an award against the Fund, must be determined and shown of record." Clyde's Auto Salvage & Coal Op. Cas. Co. v. Hughes, 204 Okl. 467, 231 P.2d 356, 358, sustained an award where the evidence showed that the claimant never missed a day of work after the first injury and drew regular wages. Cited was Dierks

Lumber & Coal Co. v. Lindley, 182 Okl. 185, 77 P.2d 44, 46, " 'Ordinarily a disability cannot be classified as total [under the Act] where the earning power of the employee is not wholly destroyed and capacity to perform remunerative employment remains.' " (Brackets added.) In Special Indemnity Fund v. Long, Okl., 281 P.2d 933, 935, the court affirmed the award to claimant saying, "There is therefore evidence that respondent was not totally disabled prior to the time of the injury in question. The commission found this issue against the Fund, and there being evidence reasonably tending to support such finding it will not be disturbed in this court." In Special Indemnity Fund v. Mayo, Okl., 351 P.2d 1008, 1010, the holding was: "The record, viewed in its entirety, amply shows employee possessed a modicum or residuum of capacity to engage in gainful occupation prior to sustaining the last specific injury for which compensation was awarded." These last three Oklahoma cases actually aid respondent, and are authority that her award from the Second Injury Fund should not be set aside.

■ Here, irrefutably against appellant is the undisputed fact that except for some days away (some so spent on account of caring for an invalid mother) respondent worked almost four years at her jobs in Deaconess Hospital. During all this time she drew regular wages, with periodic increases thereof as the record shows. Dr. Stephens advised her to keep working after the 1959 hip injury. Two of her superiors testified that she performed her duties in a cheerful, willing and satisfactory manner. Although the conclusions of two other nurses were that her work was not satisfactory and she was incapable of doing it (a charitable employee), the inference is clear that they were present and saw her perform at least some of her prescribed duties. There was thus sufficient competent and substantial evidence upon which the Industrial Commission based the award to sustain the same and to overrule appellant's contention that respondent was total-

ly and permanently disabled prior to her second injury. Seabaugh's Dependents v. Garver Lumber Mfg. Co., 355 Mo. 1153, 200 S.W.2d 55, 62; Wood v. Wagner Electric Corporation, 355 Mo. 670, 197 S.W.2d 647; Conley v. Meyers, supra. Such award, under the facts and circumstances of this case, complies with the requirement that the Workmen's Compensation Act be liberally construed, Grant v. Neal, supra, and furthers the purpose of the Second Injury Fund law to encourage employment of the partially handicapped. Stewart v. Johnson, Mo., 398 S.W.2d 850.

The judgment is affirmed.

BARRETT and STOCKARD, CC., concur.

PER CURIAM:

The foregoing opinion by PRITCHARD, C., is adopted as the opinion of the Court.

All of the Judges concur.