Olga HOWE, Respondent,

v.

M. E. MORRIS, Treasurer of the State of Missouri as Custodian of the Second Injury Fund, Appellant.

No. 53126.

Supreme Court of Missouri, Division No. 2.

April 8, 1968.

Quinn & Quinn, William B. Quinn, Julia M. Quinn, Timothy G. Noble, Robert L. Weise, St. Louis, for respondent.

Norman H. Anderson, Atty. Gen., Jefferson City, Gene R. Spengel, Jr., Sp. Asst. Atty. Gen., St. Louis, for appellant.

BARRETT, Commissioner.

The State Treasurer as custodian of the Second Injury Fund has appealed a circuit court judgment which affirmed an Industrial Commission award to Olga Howe of total and permanent disability benefits against the fund amounting, after the employer-insurer's liability, to 253 weeks at $42.50 a week and thereafter for the remainder of the employee's life $27.50 a week. The attack on the award is twofold; first, that "the award was clearly contrary to the overwhelming weight of the evidence." The basis of this ground is that the evidence showed that after the employee's right shoulder injury on January 29, 1965, she was able to and did resume the same type of work, said to be sedentary, for several months (appellant asserts sixteen months) and, therefore it is urged that there was no basis "for permitting her to quit work altogether and now contend that the Second Injury Fund owes her permanent total benefits including a life pension." In the second ground of attack it is asserted that there "was not sufficient evidence to warrant the award" because "the evidence clearly showed that employee at the time of her shoulder injury on January 29, 1965, was already 66 years old and seriously disabled." In this connection it is urged that she had been retired from one employment and was not physically "capable or suitable *for other than sedentary type of work such as that of a housemaid*, which work she was pursuing." (Emphasis supplied.) In short, it is argued that because

of her preexisting disability she was "not employable in the open labor market" and since she now draws social security benefits of $100.00 a month it is "unfair to allow her permanent total benefits including a life pension from the Second Injury Fund when she chose to quit work some sixteen months after her shoulder injury." Unfortunately, no authorities are cited in support of the second point (Cole v. Morris, Mo., 409 S.W.2d 668, 671) and the only authorities cited in support of the first point are Seabaugh's Dependents v. Garver Lumber Mfg. Co., 355 Mo. 1153, 200 S.W.2d 55 and the statute (RSMo 1959, § 287.490) both relating to the findings and awards of the commission and the scope of appellate review.

Only the respondent, Olga Howe, offered any evidence, there was no countervailing or contrary proof by either the employer-insurer or the state and so the basic facts stand undisputed. This is not to say that the appellant was bound to offer conflicting evidence but of necessity in this posture the state's position is that upon this record only one inference is permissible and thereunder as a matter of law the respondent is not entitled to an award.

In brief, these are the circumstances upon which the award was made: In 1958, then 58 years of age (she was born November 1, 1899), Olga was employed by Mrs. Mary Kennard Wallace, 4976 Pershing Place, St. Louis, as a second floor maid. She worked eight hours a day, six days a week, and was paid $150.00 a month, room, board, laundry and uniforms. She pressed and mended Mrs. Wallace's uniforms but her primary duties were to dust, make beds and generally care for five bedrooms and three baths. This is the employment the state characterizes as "sedentary type of work." On January 29, 1965, after more than six years, Olga in descending the rather dark front hall stairway "missed the lower steps and I fell over against the baseboard." Her left hip was sprained but her principal injury was "a comminuted fracture of the neck of the right scapula."

For this injury she was hospitalized from January 29, 1965 to February 20, 1965. At the hearing one of the doctors reported the bony deformities resulting and offered the opinion that "she has a permanent partial disability of the right upper extremity at the shoulder of about 30 percent as a residual." Another expert estimated "a disability at the right shoulder amounting to a loss of fifty percent." In any event, after this injury and treatment, Olga returned to her employment with Mrs. Wallace, at first she "could only do mending" but by the end of March "I just went lightly about my work." She could see, however, that Mrs. Wallace was not happy with her, she "seemed very aggravated with me," and on June 6, 1965, she left her employment and "went on social security." On November 10, 1965, she went to work for Mrs. N. B. Gregg as a second floor maid but this work "was much too heavy for me. Much too hard" and at the end of six months she quit that employment and has not worked since, "Because I am not able to do it any more." She now lives alone in a room at 4923 Mardel and takes most of her meals out. It is in returning to Mrs. Wallace's employment and her six months with Mrs. Gregg that the state refers as conclusively establishing that "she was still able to resume the same type of work" and that therefore the award was contrary to the weight of the evidence, even though this particular injury was an "additional injury to her person."

Briefly, these were Olga's prior injuries and disabilities: As stated she had worked as a bookkeeper in Belleville for 10 years before coming to St. Louis. In 1949 she fell on a sidewalk at home and fractured both wrists. In November 1950 because of osteoarthritis Dr. Blair operated on her right hip. In March 1951 she entered a hospital "for manipulation" of her right hip and in the process her right hip was fractured necessitating another operation and the insertion of an "intramedullary nail." In 1953 because of osteoarthritis she was again under the care of Dr. Blair

"for a hip arthroplasty of her left hip." In 1964 a cataract was removed from her right eye. Olga's career and work record should be interpolated here: 1950 to 1953 she was married and a homemaker. In 1953 she was employed by Mrs. Haws to do general housework. After her 1953 operation she did not work again until 1955 when she went to work as a cashier at Famous-Barr—from which she was retired after five years. Without detailing their examinations and reports the doctors concluded that "since this person has made a reasonable effort to return to her former occupation as a housemaid, but was unable to continue this type of work because of her physical impairment that she may now be considered permanently and totally disabled." Aside from her shoulder injury rated at 30%, one doctor rated both wrists at "about 30 percent as residual of injuries sustained in 1949," and her legs and hips at "about 50 percent" and that the "combined disabilities" had resulted "in a prior permanent partial disability of about 85 percent of the individual as a whole."

In general response to the appellant's statement that after leaving Famous-Barr Olga "was not physically capable or suitable for other than sedentary work which was precisely the type of work she had been doing since at least 1953" it may only be said that "(t)he purpose of the Second Injury Fund law [is] to encourage employment of the partially handicapped." Apropos here is Lieneke v. Evangelical Deaconess Hospital, Mo., 418 S.W.2d 142. In that case it was contended that under the evidence the "respondent was totally disabled prior to the last accident, and therefore the Second Injury Fund cannot be held liable for compensation." The evidence as a whole was considered, the court pointed out that the state "has failed to accord respondent the benefit of the rule that on review of a Workmen's Compensation case the evidence, together with all the reasonable inferences to be drawn therefrom, will be viewed in its light most favorable to support the finding and award." The court noted the purpose of the Second Injury Fund law "to encourage employment of the partially handicapped" and concluded that the award of total and permanent disability was supported by competent and substantial evidence. In its conclusion here the state urges that the commission "should have allowed only a nominal recovery against the Second Injury Fund based upon the prior disabilities combining with the shoulder injury to produce a greater overall disability than the sum of the two." Consequently the state contends that this court should reverse the decision and remand this cause with directions to the commission "to make a finding against the Second Injury Fund other than permanent total disability." This particular argument raises questions of inconsistency of claims as well as the power of courts on review but above all it presupposes that the state's position appears as a matter of law but, as indicated throughout the case "does not descend to a question of law only." Buzzard v. Morris, Mo., 410 S.W.2d 71, 72. The commission's award is supported by competent and substantial evidence and this court could not under the rules make another and contrary finding. Lieneke v. Evangelical Deaconess Hospital, supra; Grant v. Neal, Mo., 381 S.W.2d 838; Cole v. Morris, Mo., 409 S.W.2d 668. And for the reasons indicated the judgment is affirmed.

STOCKARD and PRITCHARD, CC., concur.

PER CURIAM.

The foregoing opinion by BARRETT, C., is adopted as the opinion of the court.

All of the Judges concur.