HAROLD KINYON (EMPLOYEE), RESPONDENT, v. FRED J. KINYON AND R. E. ECKSTEIN, PARTNERS, DOING BUSINESS AS FRED J. KINYON ICE & FUEL COMPANY (EMPLOYER) AND UNITED STATES FIDELITY & GUARANTY COMPANY (INSURER), APPELLANTS.—71 S. W. (2d) 78.

St. Louis Court of Appeals. Opinion filed May 8, 1934.

624

*Carter & Jones* and *Richard S. Bull* for appellants.

McCULLEN, J.—This is an appeal by the employer and insurer from a judgment of the Circuit Court of St. Louis County, reversing an award made by the Workmen's Compensation Commission, based on an application for a rehearing alleging a change of condition.

The respondent, employee, a truck driver, was injured while unloading coal on November 7, 1927, when he slipped and fell, striking the back of his head. The original award by the commission was made on April 4, 1928, after a hearing. That award included $509.90 for medical aid, compensation of $20 per week for 300 weeks, and $8.25 per week thereafter for life, for permanent total disability. The findings of fact upon which the original award was based included a

finding of injury to the right side of the brain, resulting in left hemiplegia, and a finding that hemiplegia is a permanent total disability.

No appeal from the original award was taken by any of the parties.

On August 27, 1931, the employer and insurer filed with the commission an application for rehearing and review on the ground of a change in condition, the application stating that the "employee is now able to work and is no longer permanently and totally disabled."

A rehearing before a referee was held on October 19, 1931, on said application. The employee testified at the rehearing that he was working for the City of Kirkwood, in the Police Department and Light and Water Department, having entered that employment on January 5, 1931. He stated that this employment had been continuous from January 5, 1931, and that he was working six nights a week and on Sunday. His duties were to answer the telephones. He said he was paid $90 per month for such services; that such work did not require him to stand; that prior to taking the job mentioned he had done a little work checking and counting cement sacks, and that he "would sit down to do that too."

With respect to his physical condition at the time of the rehearing, the employee testified that he was not much better than he was when the accident first happened; that his condition, "has not changed much;" that he could walk without the aid of a cane only on a level place; that before the accident he was driving a truck, but that he cannot drive a truck now. He testified that his left arm and left leg are both stiff; that he could not raise his arm above his head and could not bend his elbow; that he could not close the fingers of his left hand or move his left wrist. He said that his left leg was in a similar condition; that it was stiff and that he could "hardly use it." He was asked if he had received any medical treatment or attention since May 4, 1928, and answered: "I have been going to this Doctor all the time (indicating Dr. Barnett)." He further testified in this connection:

"Q. When was the last time you went to Dr. Barnett? A. I have gone there on and off all the time. I have terrible headaches."

He said he was taking treatments from a masseur to work out the "paralysis" in his left arm and left leg.

He also testified that his eyes were bothering him and that the bad condition of his eyes began after he had "a stroke" on November 7, 1928. He described the condition of his eyes by saying: "I can't see out of the inside of the right eye and the outside of the left eye." He said he could not see anything to the left of his left eye, or to the left of his right eye. When asked whether this condition had been better or worse since April 4, 1928, he said: "It hasn't got any worse and it hasn't got any better." Being asked:

"Q. Is there any other condition beside the eye condition, the headaches and the paralysis in the arm and leg that is affecting you at this time?" he answered: "Not as I know of." When asked if he was able to perform the service of telephone operator, he said: "Well, with the help of the boys, yes."

He further testified that he had been paid in compensation under the original award, $20 per week for 205 weeks, making a total of $4,100 paid to him up to the time of the rehearing.

Dr. C. E. Barnett testified that he had been treating the employee since the accident, and described his condition as, "Hemiplegia of the left side." He defined hemiplegia as, "Paralysis of the left side." He testified that the employee does not have the use of his left arm at all. With respect to the use by the employee of his left leg, the doctor said:

"The only use he has—its merely a stub—merely a body swing; he doesn't walk with it; he gives his body a swing and braces it for the next step, is all it is."

He testified that the employee suffered from headaches about once a week, "or something like that."

As to the condition of the employee's eyes, the doctor testified that the employee "has no vision on the left side;" that this condition was caused by "Paralysis of the optic nerve that controls the left side." The doctor was asked: "Do you know from your examination that there is defective vision in either eye?" and answered "Absolutely." The doctor also testified that the employee's mentality is below what it was before the accident.

With respect to the employee's ability to work, he testified:

"Q. Doctor, is Mr. Kinyon able to work? A. Well, I should say that he should not work, but I know he is spending so much money—the boy needs money to pay these doctor bills, and that's the only reason I told him I thought he could work, to help him to get money to pay those bills. . . .

"Q. You heard him describe the kind of work he is doing? A. Yes.

"Q. Is he able to do that work? A. He wouldn't be by himself. The police practically do half the work, to tell the truth about it.

"Q. He gets paid for that, doesn't he? A. Yes. His uncle happens to be the Mayor out there, and it is more of an honorary job than anything else."

The doctor further testified that in his opinion the condition of the employee's left arm and left leg, as described by him, is permanent.

After the rehearing, the full commission of three members, on November 6, 1931, made an award for permanent partial disability of $20 per week for 400 weeks, payments to begin as of November 7, 1927, subject to a credit of $4,100 previously paid the employee. The nature

of the employee's injury was again found to be, "Left hemiplegia and partial loss of vision." The employee's average weekly wages were found by the commission to be $33, and the weekly compensation allowed, was $20.

In its "Statement of facts and rulings of law" which accompanied the award, the commission, after referring to the original award of April 4, 1928, stated that it found from the evidence adduced at the rehearing on October 19, 1931, that the employee had been working since January 5, 1931, in the employ of the Police and Light and Water Department of the City of Kirkwood, for which services he had been receiving $90 per month. The commission also stated that the evidence further shows that the employee's uncle is the Mayor of Kirkwood, "and it is pretty evident that this is the reason he is now employed." The commission further stated that due to the nature of the employee's injuries, "we doubt very seriously if he would be able to compete in the open labor market and receive any kind of a job." With respect to the employee's condition, the commission stated:

"Furthermore, the evidence does not show that his condition has changed since April, 1928. However, the fact remains that he is employed and has been so since January 5, 1931, and we cannot say therefore that he is now permanently and totally disabled. The evidence shows that the condition he is now in is permanent and he must be classed as a permanent partial disability."

In reversing the award made by the commission, the circuit court filed a memorandum stating there was not sufficient competent evidence in the record to warrant the making of such award.

The appellants contend that in making its award the commission conformed to the law, and that the circuit court erred in reversing such award.

It is conceded by appellants, with commendable fairness, that there is no evidence in the record indicating that the employee's physical condition was greatly changed or improved since the time of the original award, when his injury was classified as one entitling him to compensation for total permanent disability. It is also conceded by appellants that the nature of employee's injury will forever prevent him from engaging in employment similar to that in which he was engaged at the time of the accident. Stated in their own language, the contention of appellants is simply:

"That under the express provisions of the Workmen's Compensation Act the commission had no other course open than to reform its award and diminish the compensation previously allowed upon a showing that the employee no longer was totally disabled within the meaning of the Act."

No brief has been filed in this court on behalf of the employee on this appeal.

Appellants argue that at the time of the original award on April 4, 1928, the employee was not working, and that the commission's finding at that time that the injury had resulted in permanent total disability could be regarded as proper, but that the evidence on this rehearing having shown that the employee had been continuously engaged in employment for eight and one-half months, and regularly earning $90 per month during that period, he was not unable to return to "any employment," and therefore could not longer be considered as totally disabled within the meaning of section 3305 (e), Revised Statutes of Missouri, 1929 (Mo. St. Ann., sec. 3305 (e), p. 8239).

Total disability is defined, in the section mentioned, as follows:

"The term 'total disability' as used in this chapter shall mean inability to return to any employment and not merely mean inability to return to the employment in which the employee was engaged at the time of the accident."

Appellants, in support of their contention, cite two cases decided by this court, in which the above statute was involved. The first case referred to is Valentine v. General Paper Stock Co. (Mo. App.), 37 S. W. (2d) 457, in which the only issue was the correctness of a final award of the Workmen's Compensation Commission in allowing an employee $13.33 a week for four hundred weeks for temporary total disability after the commission had made a temporary or partial award in which the employee had been allowed the same amount per week for only twenty-one and one-seventh weeks. The facts in that case are clearly distinguishable from the facts in the case at bar. The injury in that case was a hernia, and the Workmen's Compensation Commission did not at any time find that there was a permanent total disability, whereas, in the case at bar the commission did find permanent total disability and based its original award on such finding.

The Valentine case did not arise upon an application for rehearing and review based upon an alleged change of condition, as did the case at bar. In the Valentine case it appeared that the employee, at the time the final award was made, was employed by an electric company, and was receiving the sum of $17.28 per week, which was only $2.72 less than the wages he had been receiving before his injury. There was nothing in that case to show that the employee held such employment and received such compensation by virtue of any special influence, and by virtue of others performing many of the duties of the employment for him, whereas, in the case at bar the only evidence adduced on the rehearing shows that the fact that the employee's uncle was Mayor of the City of Kirkwood, and the performance by others of some of the duties of the employment, were highly important factors in enabling the employee to hold the job and receive the $90 per month.

The other case decided by this court, and relied on by appellants is Vollet v. Federal Sign Co. (Mo. App.), 49 S. W. (2d) 201. What we have said with respect to the above Valentine case also applies to the last named case. While we believe both cases correctly declare the law applicable to the facts of record therein, they cannot be considered as authority in support of appellants' contention on the facts appearing of record in the case at bar. This is also true with respect to the cases from other states cited by appellants herein.

In the case now before us we have an original award by the commission, based upon findings showing permanent total disability of the employee, and a subsequent award changing the original award, although the subsequent award, the one involved herein, is based upon findings in which the commission specifically states that the evidence does not show that the employee's condition has changed since the time of the original award in April, 1928. Furthermore, in the case at bar the commission has specifically stated that it is pretty evident that the reason the employee is now employed is that his uncle is the Mayor of Kirkwood, and that it doubts "very seriously" if the employee would be able to compete in the open labor market "and receive any kind of a job." No such situation was involved in any of the cases referred to by appellants.

The question involved here must be determined by a proper construction of section 3305 (e), Revised Statutes of Missouri, 1929 (Mo. St. Ann., sec. 3305 (e), p. 8239). In passing upon the Workmen's Compensation Law, we are required by the provisions of section 3374, Revised Statutes of Missouri, 1929 (Mo. St. Ann., sec. 3374, p. 8293), to give all of its provisions a liberal construction with a view to the public welfare. In accordance with this rule, our courts have held that the Workmen's Compensation Act is to be construed by reading the whole act, and where there is any doubt respecting the right to compensation, such doubt should be resolved in favor of the employee. [Pruitt v. Harker (Mo.), 43 S. W. (2d) 769, 773; Betz v. Columbia Telephone Co., 224 Mo. App. 1004, 24 S. W. (2d) 224.] We believe the same rule must be applied in favor of the employee where it is sought, on a rehearing, to diminish compensation which has been awarded to such employee.

Having in mind the above mentioned rule of liberal construction, the question presented may be stated thus: What did the Legislature mean by the use of the phrase, "inability to return to any employment," as it appears in subdivision (e) of the statute above referred to? There being nothing of a technical nature involved therein, it is our duty to hold that the Legislature intended that the words should be taken in their "plain or ordinary and usual sense." [Section 655, R. S. Mo. 1929 (Mo. St. Ann., sec. 655, p. 4899).] When we speak of the "ability" or "inability" of a person to obtain and hold em-

ployment, we ordinarily have in mind that the person referred to is either able, or unable to perform the usual duties of whatever employment may be under consideration, in the manner that such duties are customarily performed by the average person engaged in such employment.

We believe it cannot be reasonably said that the employee in this case, whose present physical condition has been found by the commission to be the same as it was at the time of the original award, when he was found to be permanently and totally disabled, has regained his ''ability'' to return to any employment in the ordinarily accepted sense of the word employment. No employer of labor, in the usual and ordinary course of business, seeking the services of persons to perform the duties of any sort of employment could reasonably be expected to hire this employee in his present physical condition, with his entire left side paralyzed and his vision impaired, because it is obvious that he could not, if compelled to depend upon his own strength and his own ability, perform the duties of such employment. The fact that it happens to be this particular employee's good fortune to have an uncle who is Mayor of the City of Kirkwood, and the fact that he has received the assistance of others in performing some of the duties of the job whereby he receives $90 per month, cannot be taken as a sufficient basis for holding that the employee has regained his ability to return to employment, in the face of the findings by the commission with respect to the employee's actual physical condition. If the Mayor's helpful interest in the employee's welfare, and the assistance given him by others in performing the duties of the employment should be withdrawn, as they may be at any time, he would not himself have the ability, in his present condition, to hold the job.

Evidence showing the receiving of money for services by an employee alleged to be permanently and totally disabled must, of course, be considered in determining under the legislative definition, whether or not that character of disability exists, but in view of the findings by the commission as to the actual physical condition of the employee in this case, such evidence cannot be given the effect contended for by appellants. To give that evidence such effect on this record would require a narrow instead of a liberal construction of the legislative definition of the term ''total disability'' and would declare a rule which would tend to encourage idleness on the part of injured employees and discourage them from making efforts to help themselves for fear that any activity on their part might furnish evidence against their right to the compensation which the law has provided for them.

The specific legislative command for a liberal construction, as well as the very purpose of the Workmen's Compensation Law, preclude the idea that the Legislature, by its definition of the term ''total disability,'' intended to establish a rule requiring an injured employee

to remain completely inactive and inert, to avoid imperiling his compensation for permanent total disability.

We are of the opinion that the circuit court was correct in ruling that there was not sufficient competent evidence in the record to warrant the commission in making its award on the rehearing. The judgment of that court is, therefore, affirmed.

*Hostetter, P. J.,* and *Becker, J.,* concur.