James PARKER, Appellant,

v.

MUELLER PIPELINE, INC., Respondent.

No. WD 43385.

Missouri Court of Appeals, Western District.

March 5, 1991.

Motion for Rehearing and/or Transfer to Supreme Court Denied April 30, 1991.

Richard E. Koenig, Sedalia, for appellant.

Daniel T. DeFeo, Kansas City, for respondent.

Before SHANGLER, P.J., and KENNEDY and FENNER, JJ.

FENNER, Judge.

James Parker appeals from an award of the Labor and Industrial Relations Commission (Commission) that affirmed and modified an award of the Administrative Law Judge.

The factual background forming the basis for this appeal began on November 13, 1985. At that time, Mr. Parker was employed by Tempel–Callison Construction Company (Tempel–Callison) when he slipped and fell while lifting a concrete form over a wall. Mr. Parker received medical treatment for his back injury as a result of the accident. Mr. Parker went back to work for Tempel–Callison in January, 1986, on a project which lasted four to six weeks. His back was still hurting at that time. Mr. Parker then drew unemployment until he began work on April 16, 1986, for respondent, Mueller Pipeline, Inc. (Mueller Pipeline).

The first day of work for Mueller Pipeline, Mr. Parker ran a "hogger" machine. He began to experience pain and soreness in his back which worsened throughout the day. The following day, after a discussion with his foreman, Mr. Parker was placed on lighter work, such as light shoveling, raking yards and seeding. However, Mr. Parker's back pain did not subside, but continued to worsen. After the second day of work, Mr. Parker felt as if his leg was paralyzed, that he could hardly stand and could not control his legs. Mr. Parker was treated for this injury for approximately sixteen to eighteen weeks during which time the treating physician, Dr. Mounts, told him that his back was not going to get much better.

Following his two days of employment with Mueller Pipeline, Mr. Parker collected unemployment benefits until August, 1986, when he became employed by Superior Utilities, Inc. Mr. Parker worked for Superior until October, 1986, when he quit, partly because his back was causing him problems.

Mr. Parker filed his first workers' compensation claim, Injury No. 85–136527, against Tempel–Callison in July, 1986. Following a hearing, the Administrative Law Judge assessed a 15% permanent partial disability of the body as a whole.

In February, 1987, Mr. Parker filed a second claim for workers' compensation, Injury No. 86–160766, against Mueller Pipeline, which is the subject of the present appeal. In connection with this claim, a temporary award was entered July 11, 1988, entitling Mr. Parker to temporary disability benefits from Mueller Pipeline.

A final hearing was held on August 9, 1989, following which the Administrative Law Judge entered a final award on Octo-

ber 13, 1989. Included in said final award was the finding that Mr. Parker had "... continued to suffer major psychological problems since the April 16, 1986, injury. This aggravated the already existing depression caused by the November 13, 1985, accident while working for Tempel–Callison Company." In other words, Mr. Parker was found to have suffered an aggravation of his psychological problems dating back to the accident during his employment with Tempel–Callison. A finding of permanent partial disability of 10% was assessed by the Administrative Law Judge as a result of the work related psychological injury.

With regard to the July 11, 1988, award of temporary disability, it was determined that those benefits had ended on January 19, 1988, but § 287.160.3, RSMo 1986, prohibited a credit for overpayment of temporary total disability benefits already paid by Mueller Pipeline.

On appeal to the Commission, the award of 10% permanent partial disability was affirmed. The denial of credit for overpayment of temporary total disability was reversed, the Commission finding that § 287.160.3 does not prohibit Mueller Pipeline from obtaining credit or offset for overpayment of temporary total disability benefits.

Mr. Parker presents three points on appeal, the first of which alleges that the Commission erred in finding that his psychological disability resulting from the April 16, 1986, injury, while employed by Mueller Pipeline, was an aggravation of an already existing depression caused by the November 13, 1985, accident while he was employed by Tempel–Callison. He argues that the evidence supported a finding that the onset of his permanent and total psychological disability was caused by the injury of April 16, 1986, while he was employed by Mueller Pipeline.

As correctly stated by Mueller Pipeline in its brief, the relevant standard of review is set forth by both statutory and case law.

The applicable statutory provision is § 287.495 which provides, in pertinent part:

1. ... Upon appeal no additional evidence shall be heard and, in the ab-

sence of fraud, the findings of fact made by the commission within its powers shall be conclusive and binding. The court, on appeal, shall review only questions of law and may modify, reverse, remand for rehearing, or set aside the award upon any of the following grounds and no other:

(1) That the commission acted without or in excess of its powers;

(2) That the award was procured by fraud;

(3) That the facts found by the commission do not support the award;

(4) That there was not sufficient competent evidence in the record to warrant the making of the award.

On appeal, the evidence and legitimate inferences must be viewed in the light most favorable to the award. *Matthews v. Roadway Express, Inc.,* 660 S.W.2d 768, 769 (Mo.App.1983). It is within the province of the Commission to judge the credibility of the witnesses and this court will not substitute its judgment for that of the Commission. *Merriman v. Ben Gutman Truck Service, Inc.,* 392 S.W.2d 292, 296 (Mo.1965).

While Mr. Parker extensively details the evidence to support his position, this court must disregard evidence which might support a different finding from that of the Commission. *Matthews,* 660 S.W.2d at 769. This is true even though a finding by the Commission to the contrary would have been supported by the evidence. *Id.*

Pursuant to the foregoing standard, the following evidence was adduced to support the award of the Commission. Documents completed by Mr. Parker and entered into evidence before the Commission reveal that in June, 1987, he filed a disability report stating that his disabling condition first bothered him in November, 1985, and describing this condition as spine problems and psychological problems. Mr. Parker also stated in this disability report that his condition finally made him stop working on October 15, 1986. In addition, Mr. Parker completed an application for supplemental security income stating that he had

back pain and psychological impairment which began on October 15, 1986. Mr. Parker also completed an application for disability benefits wherein he stated that he was unable to work because of a disabling condition that began on October 15, 1986.

There was, likewise, sufficient medical and psychiatric testimony to support the finding by the Commission that Mr. Parker had psychological injury as a result of his original November 13, 1985, injury while employed by Tempel–Callison.

For instance, Harry Overesch, M.D., an orthopedic surgeon, examined Mr. Parker in relation to his Tempel–Callison and Mueller Pipeline compensation claims. According to Dr. Overesch, Mr. Parker denied that he suffered any injury subsequent to November 13, 1985, while he was employed by Tempel–Callison.

Dr. John Mueller, a physician and psychiatrist examined Mr. Parker in connection with the Tempel–Callison and Mueller Pipeline compensation claims. Dr. Mueller examined Mr. Parker in December, 1987, following Mr. Parker's employment with Tempel–Callison, Mueller Pipeline and Superior Utility Company. Initially, as indicated in a medical report dated March, 1988, it was Dr. Mueller's opinion that Mr. Parker was suffering a major depression which he developed subsequent to his injury while employed by Mueller Pipeline. This opinion was based upon information given Dr. Mueller by Mr. Parker as to the onset of his mental symptoms. However, Dr. Mueller indicated that he was unaware that Mr. Parker had filed a claim for disability benefits indicating the onset of the disability to be October, 1986, and that would affect his opinion as to when the onset of the mental depression occurred. Additionally, Dr. Mueller testified that on further review of all of the records supplied to him, there was documentation by Dr. Butts, another psychologist who treated Mr. Parker, that Mr. Parker had symptoms of major depression prior to 1986 when he was employed by Mueller Pipeline. Mr. Parker was in need of treatment and if he receives said treatment there is a fifty to seventy percent chance for recovery.

Finally, the opinion of Dr. Kenneth Wilcox was presented. Dr. Wilcox is a psychologist who was originally retained by Tempel–Callison in regard to Mr. Parker's first workers' compensation claim. Dr. Wilcox first saw Mr. Parker in May, 1987. At the time of initial evaluation, Dr. Wilcox detected positive findings for depression and recommended treatment which was authorized by Tempel–Callison's attorney. Dr. Wilcox concluded that Mr. Parker had not been able to work since the Mueller Pipeline incident in April, 1986. However, the record does not indicate that Dr. Wilcox had knowledge of Mr. Parker's subsequent employment with Superior Utility.

A careful review of the record reveals ample evidence from which the Commission could have properly ruled as it did. The award of the Commission being supported by the evidence, point one is denied.

■ In point two, Mr. Parker alleges that the Commission erred in finding that he suffered only 10% permanent partial disability as a result of his employment with Mueller Pipeline because the evidence supported a finding of permanent and total disability.

Mr. Parker cites the following portion of the decision of the Administrative Law Judge which was affirmed by the Commission:

> ... Dr. Wilcox indicates that claimant's disability is of a permanent and total nature. Dr. Mueller indicates that there is no longer any disability (since January 19, 1989) and that claimant is simply suffering from a depressive neurosis (dysthymia). Both find claimant's condition to be work related....
>
> *   *   *   *   *   *
>
> Additionally, I find from the evidence that claimant continues to have psychological problems which result in a permanent partial disability of 10 percent to the body as a whole based upon claimant's work related psychological injury....

■ As in point one, here again is the situation where the medical opinions differ.

Unless against the overwhelming weight of the evidence, the Commission's determination regarding conflicting medical opinions is not to be disturbed. *Patchin v. National Super Markets, Inc.*, 738 S.W.2d 166, 167 (Mo.App.1987). It is within the province of the Commission to assess a percentage of disability and said assessment will not be disturbed where, as here, the percentage of disability is hotly contested. *Id.*

There was testimony from Dr. Wilcox that Mr. Parker suffers from major depression which is totally disabling. However, Dr. Mueller opined that Mr. Parker suffers from Dysthymia, a nondebilitating neurosis and not major depression. Dr. Mueller was aware of Dr. Wilcox's opinion, but was of the opinion that major depression does not cause an individual to be permanently disabled because that illness is a highly treatable and even a curable condition. Additionally, Dr. Mueller stated that the treatment results with major depression are 85 to 95 percent successful.

The Commission evidently chose not to believe the testimony of Dr. Wilcox, as it was free to do. The record indicates that the Commission had a sufficient basis upon which it could have found Mr. Parker suffered from a 10% permanent partial disability. There was no error in such finding. Point two is denied.

In his third and final point, Mr. Parker argues that the Commission erred in finding that Mueller Pipeline was entitled to an offset or credit for any temporary total disability payments made after January 19, 1989, through October 13, 1989. Mr. Parker alleges that there was insufficient evidence to warrant this award as there were no facts presented before the Commission as to the amount of the claimed credit or offset. The Commission affirmed the finding of the Administrative Law Judge that Mr. Parker was no longer temporarily and totally disabled after January 19, 1989, the date he was discharged by Dr. Mueller.

Included in the record before the Commission and now before this court is the Application for Review filed by Mueller Pipeline wherein an offset or credit for the temporary total disability benefits between January 19, 1989 and October 12, 1989, is requested. Also included in the record before the Commission and now before this court is the award of temporary total disability entered July 11, 1988. The award sets benefits at the rate of $233.84 per week for so long as Mr. Parker remains temporarily totally disabled. Mr. Parker was found not to be temporarily totally disabled after January 19, 1989. Mr. Parker's assertion that there were no facts presented to the Commission as to the amount of the claimed offset or credit is, therefore, without merit. Point three is denied.

The award of the Commission is, in all respects, affirmed.

All concur.