Titus SHIPP, Employee/Respondent,

v.

NATIONAL VENDORS, Employer,

and

Insurance Company of North
America, Insurer,

and

Treasurer of Missouri, as Custodian of
the Second Injury Fund, Additional
Party/Appellant.

No. 62128.

Missouri Court of Appeals,
Eastern District,
Division Four.

April 20, 1993.

Motion for Rehearing and/or Transfer to
Supreme Court Denied May 18, 1993.

Case Transferred to Supreme
Court June 29, 1993.

Case Retransferred to Court
of Appeals Oct. 26, 1993.

Original Opinion Reinstated Nov. 9, 1993.

J. Patrick Chassaing, Keith K. Cheung, St. Louis, for appellant.

James C. Brandenburg, St. Louis, for respondent.

CARL R. GAERTNER, Presiding Judge.

The Treasurer of Missouri (Appellant), as custodian of the Second Injury Fund (SIF) appeals from an award of the Labor and Industrial Relations Commission (Commission). The Commission modified the award of the Administrative Law Judge (ALJ) from permanent partial disability to permanent total disability for which the SIF was liable. We reverse.

Titus Shipp (claimant) filed a claim for compensation on May 16, 1988. He alleged that while employed by National Vendors (employer) he incurred an occupational disease on or before February 19, 1987. Claimant worked for employer as a metal grinder and polisher for twenty-three years prior to February of 1987. He claims that he suffered a seizure while at work on February 19, 1987. He was initially treated for this seizure at Cochran VA Hospital and later at Gateway Community Hospital. He was diag-

nosed with chronic obstructive pulmonary disease.

The claim was heard before an ALJ on January 31, 1992. Prior to this hearing the claim against the employer was settled for 10 percent permanent partial disability referable to the lungs. The only issue left for the ALJ was the liability of the SIF.

Dr. Calman testified on behalf of claimant. He examined claimant and diagnosed him with pulmonary fibrosis and chronic obstructive pulmonary disease. Dr. Calman attributed the pulmonary problems to claimant's job as a grinder where he breathed metal dust and rated him 50 percent permanently and partially disabled from the pulmonary problems. Dr. Calman also testified that claimant suffers from cirrhosis of the liver, ascites, alcoholism and fluid in the abdomen. Dr. Calman rated claimant permanently and totally disabled when his pulmonary problems are combined with his other conditions.

Dr. Walters also examined claimant but testified for the SIF. He stated that claimant suffered from chronic obstructive pulmonary disease which was caused by some combination of breathing metal dust and smoking cigarettes. Dr. Walters also testified that claimant suffered from brain atrophy, cirrhosis of the liver, and congestive heart failure none of which were caused or aggravated by breathing metal dust. Dr. Walters rated claimant 15 percent permanently partially disabled due to the pulmonary problems. Additionally, he rated claimant 10 percent permanently partially disabled each for the heart, the liver and the brain problems.

Lastly, Dr. Bruce examined claimant at the request of employer. He rated claimant 20–30 percent disabled as a result of the pulmonary disease.

The ALJ issued his award on March 12, 1992. He found that claimant was 15 percent permanently partially disabled each for his stomach, hypertension and arthritis in the back and neck plus the 10 percent settlement for the lungs. Applying a 10 percent load he found the SIF liable for $156.71 a week for 22 weeks. Claimant applied for review with the Commission. The Commission modified the ALJ's decision and found that claimant was permanently and totally disabled for which the SIF was liable. The payments amounted to $104.48 for 40 weeks and $261.19 for the remainder of claimant's life.

■ Appellate review of a worker's compensation award is governed by § 287.495 RSMo.1986. We must affirm the Commission's award unless the facts found by the Commission do not support the award or unless the record fails to contain substantial and competent evidence to warrant the making of the award. *Carron v. St. Genevieve School Dist.,* 800 S.W.2d 64, 67 (Mo.App. 1990).

■ Within this narrow scope of judicial review, we are constrained to hold that the testimony of Dr. Calman, found to be credible by the Commission majority, supports its conclusion that claimant is totally and permanently disabled. *Carroll v. Loy–Lange Box Co.,* 829 S.W.2d 86, 89 (Mo.App.1992). Both Dr. Calman and Dr. Walters testified that the claimant suffered from a percentage of disability caused by emphysema, cirrhosis of the liver, chronic alcoholism, heart and stomach disease prior to the work-related disease discovered in February, 1987. The crucial issue in this case is whether or not these pre-existing conditions were shown to be "industrial disabilities."

■ In order to recover for permanent total disability from the SIF claimant must show that a pre-existing or previous disability combined with the latest injury resulted in total and permanent disability. Section 287.-220.1. Pre-existing or previous disability has been defined as an "industrial disability." *Wilhite v. Hurd,* 411 S.W.2d 72, 77 (Mo. 1967). An industrial disability is a disability that adversely affects a claimant's ability to work or his earning capacity rather than a physical impairment as such. *Carron v. St. Genevieve School Dist.,* 800 S.W.2d 64, 68 (Mo.App.1990), citing *Wilhite v. Hurd,* 411 S.W.2d at 77.

In *Meilves v. Morris,* 422 S.W.2d 335 (Mo. 1968), claimant failed to prove by substantial evidence that her many "bodily infirmities" were industrially disabling. The court, in reversing the Commission noted there was no evidence that these infirmities prevented

claimant from performing any part of her usual and customary duties or that they limited her to working part-time. *Meilves* at 338–339. In *Jones v. Jefferson City School Dist.*, 801 S.W.2d 486 (Mo.App.1990) the court found that claimant's pre-existing condition, a back injury, was not an industrial disability. Claimant had not missed work due to the injury and in fact had not missed work for a sixteen-year period. Claimant also swam, danced and water skied after the back injury. *Id.* at 489. *Carron v. St. Genevieve School Dist.*, 800 S.W.2d 64 also held that claimant's pre-existing condition, two laminectomies, was not an industrial disability. The court noted that the laminectomies did not prevent claimant from performing strenuous farm work or from gaining employment with the School District where she was subsequently injured. *Id.* at 68. Other cases have centered on similar criteria in determining that a pre-existing condition is not an industrial disability. *Roby v. Tarlton Corp.*, 728 S.W.2d 586, 588 (Mo.App.1987), (low IQ of a laborer was not an industrial disability where he required no close supervision and where he worked steadily for twenty-five years); *Weinbauer v. Grey Eagle Distributors*, 661 S.W.2d 652, 654 (Mo.App.1983), (pre-existing condition was not an industrial disability where it did not impede claimant from performing his usual duties). *See* also *Robinson v. Krey Packing Co.*, 467 S.W.2d 91, 94 (Mo.App.1971), and *Anderson v. Emerson Electric Company*, 698 S.W.2d 574, 576, 577 (Mo.App.1985).

Further, the cases which have held that claimant does suffer from an industrially disabling pre-existing condition involve different facts and circumstances from the case at bar. In *Reiner v. Treasurer of State of Missouri*, 837 S.W.2d 363 (Mo.App.1992), the claimant had suffered two prior work-related injuries requiring surgery, four years of unemployment, and retraining in an entirely different type of work. He was again injured four months after employment at this different type of work and this injury, combined with his pre-existing disabilities, resulted in permanent total disability. In *Kowalski v. M–G Metals and Sales, Inc.*, 631 S.W.2d 919, 920–921 (Mo.App.1982), claimant suffered from heart problems for several years and had

been hospitalized six or seven times causing him to miss several weeks of work on each occasion. His physician had warned him to quit his physically strenuous job as a pipefitter. The court stated that his heart condition was an industrial disability noting the amount of work missed as a result and the danger it posed to claimant. *Jockel v. Robinson*, 484 S.W.2d 227, 229, 230 (Mo.1972) also found that claimant's pre-existing condition was an industrial disability. Claimant was injured in 1956 and again in 1962. In between he continued to work as a sheet metal worker. However, the business manager of his local union testified that claimant could only be sent out on certain jobs and that he was fired from one job because physically he could not do the work. In *Lieneke v. Evangelical Deaconess Hospital*, 418 S.W.2d 142, 143, 144 (Mo.1967), the court found that claimant suffered from an industrial disability where she missed several months of work and was physically limited due to her pre-existing condition. *See* also *Grant v. Neal*, 381 S.W.2d 838 (Mo.1964) and *Bone v. Daniel Hamm Drayage Co.*, 449 S.W.2d 169 (Mo. 1970).

In defining the term "industrial disability" the courts have focused on whether the pre-existing condition caused claimant to miss a considerable amount of work; made claimant's work dangerous; prevented claimant from performing his previous duties; or resulted in claimant working less or only working part-time.

Claimant claims to find support in *Stoddard v. Wilson Freight, Inc.*, 651 S.W.2d 152, 158 (Mo.App.1983), which upheld the Commission's finding that claimant suffered from an industrial disability despite evidence that after the injury he drove the same truck, at the same wage, and did not miss work. The evidence also indicated he did not unload trucks *after* the accident, however nothing in the opinion indicates whether he unloaded trucks *before* the accident. If he did not unload the trucks before the accident it would appear he was not prevented from performing his usual duties and therefore his pre-existing condition was not an industrial disability. But the *Stoddard* court emphasized that only an injury which impedes

claimant from performing a part of his usual and customary duties is an industrial disability. The court's emphasis on this language and the evidence that claimant did not unload trucks after the accident when read together reasonably lead to the conclusion that claimant could no longer unload trucks after the injury and thereby suffered an industrial disability. Thus, *Stoddard* analytically fits with other cases which have found that claimant suffered an industrial disability.

*Carroll v. Loy–Lange Box Co.*, 829 S.W.2d 86 (Mo.App.1992) stands as an exception to the line of cases following the Supreme Courts definition in *Wilhite* and *Meilves* of industrial disability as a disability adversely affecting a claimant's ability to work or his earning capacity. *Carroll* found a pre-existing condition to be an industrial disability even though there was no evidence that it had affected the claimant's ability to perform the duties of his job or caused him to miss time from work or to reduce his earning capacity. In *Carroll* the only evidence pertaining to the residual effect of an earlier injury was the claimant's testimony that "I never really thought it was a hundred percent anymore, but I worked on it you know." The Commission relied upon this testimony and made an express finding of a pre-existing industrial disability to which this court deferred.

In contrast to *Carroll,* where the Commission made the specific finding of industrial disability, no such finding was made by the Commission in this case. The majority set aside the finding of the ALJ that the claimant suffered from partial, not total, disability. One member of the Commission dissented from this conclusion and expressed a somewhat irrelevant opinion that such self-inflicted conditions as emphysema from smoking and cirrhosis of the liver from alcohol abuse should not invoke Second Injury Fund liability. The Commission simply overlooked the issue strenuously asserted by the SIF here, that whatever physical impairment pre-existed it was not industrially disabling and therefore, did not give rise to Second Injury Fund liability.

A thorough review of the record discloses no medical testimony that any of claimant's pre-existing conditions affected his ability to work or his earning capacity. Claimant himself claimed to have missed work over the years because of his stomach problems but could not say how many days he missed because it had been so long ago. His arthritis caused stiffness in his neck when he worked overhead and when his hands got cold he had to stop and rub them together. He made no claim and introduced no evidence tending to show he suffered any decrease in income, required any change in working conditions, or that he was any way unable to perform all of the duties of his employment by reason of any of the pre-existing physical impairments which had progressively developed as he grew older. Although the Commission made no express finding that the claimant's pre-existing physical conditions constituted an industrial disability, such a conclusion is implicit in its finding of Second Injury Fund liability. The record is devoid of substantial evidence supporting such a conclusion. Accordingly, the award of the Labor and Industrial Commission assessing liability for permanent total disability against the Second Injury Fund is reversed.

CRANE and CRAHAN, JJ., concur.