Leroy Virgil STORY, Appellant,

v.

SOUTHERN ROOFING COMPANY and Argonaut Insurance Company, Respondents.

No. 19143.

Missouri Court of Appeals, Southern District, Division One.

April 26, 1994.

Frank B. Green, St. Louis, for appellant.

Lawrence H. Rost, New Madrid, for respondents.

MONTGOMERY, Judge.

This is a Workers' Compensation case, in which Leroy Virgil Story (Appellant) appeals from the final award of the Labor and Industrial Relations Commission (Commission). Appellant claims the Commission erred by refusing to declare him permanently and totally disabled, by denying him future medical benefits, and by using an improper standard to determine the extent of his disability.

Appellant's original claim for benefits stemmed from an accident that occurred August 29, 1983, while he was employed by

Southern Roofing Company (Respondent).[1] Appellant was holding an aluminum extension ladder that apparently came in contact with an electrical power line; he was severely shocked and burned. The burns, which were most extensive on his right forearm and hand, required several medical procedures, including numerous skin grafts, a nerve transplant, and the removal of two finger tips. He has some permanent disfigurement and physical limitations.

Appellant's claim came before an administrative law judge (ALJ) for hearing on June 30, 1992. The ALJ rejected Appellant's contention that he is permanently and totally disabled and denied Appellant's request for future medical care benefits. The ALJ did find that Appellant has certain permanent partial disabilities, however. He found that Appellant has a 70 percent disability at the right arm, below the elbow; a 10 percent disability at the left arm, below the elbow; a 10 percent disability of the body as a whole, from assorted injuries; and an additional 15 percent disability due to the "multiplicity" of his injuries. This evaluation, the ALJ noted, corresponded to that of Appellant's treating physician, Dr. Francis X. Paletta.

The ALJ concluded that, despite Appellant's partial disabilities, he was capable of competing in the open labor market. The Commission affirmed the ALJ's award in all respects.

Appellant raises two points on appeal. In the first, he argues that the Commission's decision not to declare him permanently and totally disabled and not to award him future medical benefits is "not supported by the evidence." We address this argument in some detail, *infra.*

The standard of review this Court uses in Workers' Compensations cases is set forth in § 287.495,[2] which provides in pertinent part as follows:

Upon appeal no additional evidence shall be heard and, in the absence of fraud, the findings of fact made by the commission within its powers shall be conclusive and binding. The court, on appeal, shall re-view only questions of law and may modify, reverse, remand for rehearing, or set aside the award upon any of the following grounds and no other:

(1) That the commission acted without or in excess of its powers;

(2) That the award was procured by fraud;

(3) That the facts found by the commission do not support the award;

(4) That there was not sufficient competent evidence in the record to warrant the making of the award.

■ When reviewing the sufficiency of evidence, we are limited to determining if the Commission's award is supported by competent and substantial evidence on the whole record. *Carroll v. Loy–Lange Box Co.,* 829 S.W.2d 86, 88 (Mo.App.1992). We view all evidence and inferences in the light most favorable to the award and will set aside the Commission's findings only when they are clearly contrary to the overwhelming weight of the evidence. *Id.* We disregard evidence that might support findings contrary to those of the Commission, even though the evidence would have been sufficient to support such contrary findings. *Parker v. Mueller Pipeline, Inc.,* 807 S.W.2d 518, 520 (Mo.App. 1991). The Commission determines the credibility of witnesses, and this court will not substitute its judgment on issues of fact for that of the Commission. *Id.* Conflicts in evidence are to be resolved by the Commission, whose decision is binding on this Court. *Chambliss v. Lutheran Medical Center,* 822 S.W.2d 926, 930 (Mo.App.1991). The Commission is not dependent solely on medical evidence from expert witnesses when making its findings; the testimony of lay witnesses (including the claimant) can constitute substantial evidence of the nature, cause, and extent of disability, especially when supported by medical evidence. *Strate v. Al Baker's Restaurant,* 864 S.W.2d 417, 420 (Mo.App.1993).

■ In light of the foregoing principles, we find that the Commission's final award

---

1. Argonaut Insurance Company, the other Respondent in the case, is Southern's insurer.

2. Statutory references are to RSMo 1986.

was based on competent and substantial evidence. Appellant, at 5 feet 9 inches and 145 pounds, was 33 years old when he appeared before the ALJ. At that hearing, he testified that he had no trouble standing or sitting for up to eight hours, and that he could walk, move around on foot, and climb stairs without difficulty. In addition, he said he could carry, push or pull an object like a shovel or a gun; could lift a 50–pound feed sack; and could stoop, crouch, talk, listen, taste, smell, and maintain his sense of balance.

Despite his extensive injuries in 1983, Appellant admitted that his primary disability at the date of hearing had to do with his right hand. The tips of his index and middle fingers had been amputated, and he had lost the sense of touch in his thumb, index finger and middle finger. Nevertheless, he can move and pinch with these three digits (as well as his ring and little fingers) and can feel with his ring and little fingers. In other words, he can still use the hand as a unit.

Appellant testified that, since 1987, he had worked in his brother's alternator and starter repair shop. As one of his duties, he washed parts from disassembled starters and alternators prior to reassembly. To do this, he would hold the parts in one hand and clean them with a brush he held with the other hand. He would then dry the parts with compressed air (again using both hands) and wipe them with a cloth. Occasionally, he reassembled the parts. In addition, he performed assorted janitorial duties and drove his brother's truck to run errands.

In the year prior to the hearing, Appellant reported income of $5,700 from working for his brother. When asked how often he worked, he said, "When I want to.... When I need the money." Appellant said he could work every day if he wanted to, but instead he spends much of his time hunting and fishing. He lived with his parents and said he was not seeking other employment.

The impression derived from Appellant's testimony is that, if he chose to, he could indeed compete in the open job market. Other evidence adduced at the hearing bolsters that impression.

Keith Morelock, a certified rehabilitation counselor, interviewed Appellant and reviewed his medical records.[3] Morelock, whose evaluation was introduced at the hearing, concluded that, despite some significant physical impairments, Appellant is capable of working in several entry level jobs. Examples he listed were janitor, service station attendant, automobile detailer, cashier, and sales clerk. He added that, with some additional training, Appellant could perform work similar to what his brother does—i.e., repair automotive starters. In addition, he determined that, if Appellant would obtain a valid driver's license[4] and dependable transportation, other opportunities would be possible outside his hometown (e.g., as a parking lot attendant or doing light delivery work).

Appellant proposes three reasons why the Commission should have discounted Morelock's evaluation and, instead, found him totally and permanently disabled. First, he points to the deposition testimony of Dr. Francis Paletta, his treating physician following the 1983 accident. In particular, he focuses on Dr. Paletta's response to questions about Appellant's ability to compete in the open labor market. "My opinion," Dr. Paletta said, "is it would be very difficult for Leroy to compete."

We reject Appellant's invitation to base a reversal of the Commission's award on this lone quote. To begin with, Dr. Paletta's statement that Appellant would find competing in the open labor market "very difficult" is not the same as saying he cannot compete. Furthermore, Dr. Paletta is not a vocational specialist; he is a physician. And speaking as a physician, he agreed that Appellant is physically able to work and, with some restrictions, is capable of participating in a number of areas of gainful employment. More importantly, any conflicts that may ex-

3. Morelock reviewed the records of three physicians, one of whom had treated Appellant (Dr. Francis X. Paletta) and two of whom had examined Appellant (Drs. Paul N. Week and Eli Shuter).

4. Appellant said that, although he sometimes drives his brother's truck, he has no valid drivers license. He has several times been arrested for driving while intoxicated.

ist between Dr. Paletta's opinion and Mr. Morelock's are for resolution by the Commission—not this Court.

Second, Appellant argues that, based on the testimony of two experts (Eli Shuter, M.D., and Samuel Bernstein, Ph.D.), the Commission had no choice but to declare Appellant permanently and totally disabled. We disagree. Although it is true that both Dr. Shuter and Dr. Bernstein (a vocational rehabilitation specialist) had the opinion that Appellant is unemployable in the open labor market, it is also true that the Commission was free to disregard those opinions. Mr. Morelock's evaluation, along with Appellant's own testimony, provided ample reason for concluding—as did the ALJ and the Commission—that the opinions of Drs. Shuter and Bernstein were "not credible and do not match the common sense reality of the employee's present situation." This Court will not substitute its judgment for that of the Commission, even if we would have reached a different conclusion. *Carron v. Ste. Genevieve School Dist.*, 800 S.W.2d 64, 67 (Mo. App.1990).

Third, Appellant suggests that the deposition testimony of Dr. Paul Weeks (a plastic surgeon), offered by Respondents, failed to rebut Appellant's claim that he is totally disabled and unemployable. According to Appellant, Dr. Weeks used the wrong test or standard for determining the extent of Appellant's disability. This argument has no merit. For one thing, Appellant cites no authority for the proposition that there exists a "right" test or standard, which Dr. Weeks was bound to use in evaluating Appellant's disability. Dr. Weeks testified that Appellant has a number of "physical impairments," which he quantified in terms of deficiencies in range of motion, grip strengths, and pinch strengths. He stated that Appellant has a permanent partial disability rating of 60 percent of the right upper extremity (i.e., arm) and 20 percent of the left upper extremity. He also said he believed Appellant is employable.

This evidence was competent and relevant to the Commission's decision, and the Commission was free to give it the weight it saw fit. Even if the Commission totally disregarded Dr. Weeks' testimony, however, it had before it substantial competent evidence from other sources upon which to base its decision.

Appellant also argues that the Commission erred in finding that he does not require future medical care. He supports this argument by pointing to the following statement Dr. Paletta made during his deposition: "I believe I mentioned in one of my reports that I feel Mr. Story will need continued medical care indefinitely for the rest of his life for possible problems with his injuries." During the same deposition, however, Dr. Paletta also said, "I don't expect any major things that (Appellant) will need to be treated for." This second statement accords with the opinion of Dr. Weeks, who saw no need for Appellant to receive further treatment. Ironically, in a letter dated September 13, 1991, Dr. Paletta stated that Appellant "is not interested in further treatment." Appellant's first point is denied.

In his second point, Appellant contends that the Commission used an incorrect standard for deciding if Appellant is permanently and totally disabled. He claims the Commission ignored the distinction between being able to perform certain types of work activity and being able to compete for employment in the open labor market. He also claims that, along with Appellant's physical disabilities, the Commission should have (but did not) consider Appellant's below average intelligence, limited education, poor academic record, and work history as a manual laborer.

■ The Commission's final award included citations to two cases that explain the standard to be used in determining if a person is permanently and totally disabled.[5] The first case, *Patchin v. National Super Markets, Inc.*, 738 S.W.2d 166 (Mo.App.1987), states the general test—whether the person is able to compete on the open job market. The second case, *Crum v. Sachs Elec.*, 769

---

**5.** § 287.020 defines total disability as the "inability to return to any employment and not merely [the] inability to return to the employment in which the employee was engaged at the time of the accident."

S.W.2d 131 (Mo.App.1989), specifies the key question to be answered—whether an employer, in the usual course of business, would reasonably be expected to employ the person in his present physical condition. These two cases express the approved legal standard for permanent total disability. *Hines v. Conston of Missouri No. 852*, 857 S.W.2d 546, 547 (Mo.App.1993). Presumably, the Commission understood this standard. At any rate, its award indicates that it properly applied the standard.

■ Keith Morelock explicitly addressed the issue of whether Appellant can compete in the open job market. At the beginning of his written evaluation, after first noting that Appellant was currently employed by his brother, Morelock stated: "It is this consultant's opinion that Mr. Story would be employable in other work settings should he elect to pursue this." Later, he made a similar statement: "Mr. Story has good potential to continue participation in the open labor market." Morelock listed several job options available to Appellant, including automotive starter repairer, janitor, service station attendant, automobile detailer, cashier, and sales clerk. He pointed out that, although openings for some jobs might not be immediately available in Appellant's hometown, the chances of finding employment would increase if Appellant acquired dependable transportation and a current driver's license. At the hearing before the ALJ, Morelock reiterated that Appellant is able to engage in work in the open market.

Taken as a whole, Morelock's written evaluation and testimony plainly addressed the issue of Appellant's ability to compete for employment in the open labor market—and not merely whether he could perform some work activity. Consequently, Morelock alone provided substantial evidence upon which the Commission could and did base its determination.[6] Moreover, as Morelock's written evaluation illustrates, his opinion about Appellant's employment chances was based on precisely the sorts of criteria Appellant claims were ignored: education, academic record, and work history, for example.[7] Morelock's vocational assessment was included in the evidence before the Commission as it made its determination.

Finally, Appellant attempts to use the case of *Kinyon v. Kinyon*, 230 Mo.App. 623, 71 S.W.2d 78 (1934), to argue that he, like the employee-claimant in that case, should be declared permanently and totally disabled. His effort is in vain. In *Kinyon*, the claimant suffered an injury to the right side of his brain, which resulted in paralysis of the entire left side of his body, partial loss of vision, and severe headaches. The Workmen's Compensation Commission found him to be permanently and totally disabled. Neither party appealed that decision. Approximately three years later, however, the claimant obtained employment with the City of Kirkwood, answering telephone calls. At a subsequent rehearing, the Commission changed the claimant's status to that of permanent partial disability. The court of appeals reversed this decision, reinstating the claimant as totally disabled.

At least three factors distinguish *Kinyon* from the instant case. First, the claimant in *Kinyon* was originally found to be permanently and totally disabled, and his condition never changed. Appellant's condition has also never changed, but he has never been found to be permanently and totally disabled. Second, the job the claimant in *Kinyon* acquired was clearly an honorary position. His uncle, the mayor of Kirkwood, obtained the job for him, and other city employees helped him with his duties. Here, Appellant performs meaningful and useful duties for his brother and could do the same for other employers. Third, the *Kinyon* claimant's disability was significantly more severe. He was completely paralyzed on one side of his body, had severe headaches, and had substantial vision problems. Appellant, by con-

---

6. We note that Appellant's own testimony also provides substantial evidence that, if he chose to do so, he could compete in the open labor market.

7. Regarding intelligence level, Appellant introduced evidence that he is "intellectually dull." The ALJ, who had ample opportunity to observe Appellant at the hearing, rejected this evidence *as not credible*. The Commission, by affirming the ALJ, agreed.

trast, retains considerable use of his body. Consequently, an employer could reasonably be expected to hire him in his present condition. Appellant's second point is denied.

The judgment is affirmed.

PARRISH, C.J., and SHRUM, J., concur.