Fred SEARCY, Appellant/Cross–
Respondent,

v.

McDONNELL DOUGLAS AIRCRAFT
CO., and Industrial Indemnity Co.,
Respondents/Cross–Appellants,

and

The Treasurer of Missouri as Custodian
of the Second Injury Fund,
Respondent.

Nos. 66112, 66207.

Missouri Court of Appeals,
Eastern District,
Division Five.

Jan. 31, 1995.

Motion for Rehearing and/or Transfer to
Supreme Court Denied March 7, 1995.

Robert Anthony Bedell, St. Louis, for appellant.

Edward W. Warner, St. Louis, for respondent.

Jeremiah W. (Jay) Nixon, Atty. Gen., Maria W. Campbell, Asst. Atty. Gen., Jefferson City, for Second Injury Fund.

CARL R. GAERTNER, Judge.

This is a Workers' Compensation case wherein the employee, Fred Searcy, and the employer, McDonnell Douglas Aircraft Company (McDonnell Douglas), appeal the Labor and Industrial Relations Commission of Missouri's award of 40 percent permanent partial disability of the man as a whole attributable to the lower back. The Commission found no liability against the Treasurer of the State of Missouri as custodian of the Second Injury Fund. We affirm.

Searcy was employed by McDonnell Douglas as a hydro operator. His job required him to lift sheets of aluminum onto a dye and then run the dye through a machine press, forming airplane parts. The aluminum sheets varied in weight from five to fifty pounds, depending on the type of part to be manufactured. Searcy's job also required considerable stooping, bending and walking.

In the course of employment, Searcy injured his lower back on August 15, 1988. This injury eventually required surgery, and Dr. Ronald Hertel performed the surgery in May of 1989. Dr. Hertel and Dr. Harry Cole, another one of Searcy's treating physicians, did not release Searcy to return to work until June of 1990. The doctors restricted Searcy to lifting nothing heavier than thirty pounds. When Searcy sought to return to work, McDonnell Douglas terminated his employment because of these restrictions.

Before this injury, Searcy worked for McDonnell Douglas for three years. In that three years, Searcy missed approximately

one year of work because of previous back problems. Searcy twice injured his lower back in previous non-work-related accidents. As a result of these previous injuries, Searcy underwent surgery three times, in June of 1987, September of 1987, and February of 1988. After his surgery in February of 1988, Searcy was released to return to work on July 25, 1988. His doctor's orders restricted him to lifting nothing greater than forty pounds. Searcy worked for only three weeks before the present injury of August 15, 1988.

Searcy brought a workers' compensation claim against McDonnell Douglas for disability stemming from the August 15 injury. In this hearing, Dr. Marshall Conrad testified, by deposition, on Searcy's behalf. Dr. Conrad thought Searcy suffered 80 percent permanent partial disability of the man as a whole attributed to the low back. Of this 80 percent disability, Dr. Conrad believed 45 percent stemmed from the present injury, while 35 percent disability was from the pre-existing injuries. Dr. Hertel testified, by deposition, at McDonnell Douglas' request. Dr. Hertel stated that Searcy only suffered 35 to 40 percent permanent partial disability attributed to the lower back. Dr. Hertel thought ten percent of Searcy's disability stemmed from the most recent injury, while 25 percent disability could be traced to Searcy's pre-existing injuries. Dr. Samuel Bernstein, a licensed psychologist and vocational expert, also testified on Searcy's behalf. Dr. Bernstein believed Searcy was unemployable in the current labor market. Dr. Bernstein noted that Searcy was 56 years old and had a limited education. These limitations along with his physical disabilities made Searcy unemployable, according to Dr. Bernstein.

The administrative law judge concluded that the August 15, 1988, accident resulted in 40 percent permanent partial disability of the man as whole referable to the back, and he awarded permanent total disability against the Second Injury Fund. The judge also determined the subrogation rights of the employer/insurer and the Second Injury Fund. Before filing a workers' compensation claim, Searcy had settled a law suit arising out of the 1988 accident against a third party. Searcy received $29,573.90 in that settlement.

The judge credited both McDonnell Douglas and the Second Injury Fund $14,786.95 each.

The Second Injury Fund and McDonnell Douglas filed applications for review by the Labor and Industrial Relations Commission. The Commission found that Searcy was not totally disabled. It ruled that the Second Injury Fund was not liable to Searcy and determined that Searcy was entitled to 40 percent permanent partial disability from his employer. As to the subrogation issue, the Commission found that any rights of the Second Injury Fund were made moot by the Commission's decision. The Commission affirmed the administrative law judge's decision in all other respects.

Searcy and McDonnell Douglas appeal from the Commission's decision. Our review of an award by the Commission is very narrow. We will modify, reverse, remand or set aside an award only where: (1) the Commission acted without or in excess of its powers; (2) the award was procured by fraud; (3) the facts found by the Commission did not support the award; or (4) there was not sufficient competent evidence in the record to warrant the making of the award. § 287.495.1 RSMo 1986; *McGrath v. Satellite Sprinkler Systems*, 877 S.W.2d 704, 707–08 (Mo.App.1994). When reviewing the sufficiency of evidence, we are limited to determining if the Commission's award is supported by competent and substantial evidence on the whole record. *Story v. Southern Roofing Co.*, 875 S.W.2d 228, 230 (Mo. App.1994). We view all evidence and inferences in the light most favorable to the award and will set aside the Commission's findings only when they are clearly contrary to the overwhelming weight of the evidence. *Story*, 875 S.W.2d at 230.

I

Searcy's first, second and fifth points of appeal are interrelated. In his first point on appeal, Searcy alleges that the Commission erred when it failed to find the Second Injury Fund liable for Searcy's pre-existing permanent partial disability. Searcy maintains there was no question about the existence of a pre-existing back disability; the Commission acknowledged this in its findings. But,

Searcy argues, the Commission erroneously concluded that the pre-existing disability was not industrial. Searcy, in his fifth point of appeal, argues that the Commission erred when it failed to find Searcy permanently totally disabled. In his second point, Searcy maintains that the Commission should have found the Second Injury Fund liable because Searcy's pre-existing disability combined with his subsequent accident to render him permanently totally disabled.

 An industrial disability is a disability adversely affecting a claimant's earning capacity or ability to work, rather than a mere physical impairment as such. *Carron v. Ste. Genevieve School Dist.*, 800 S.W.2d 64, 68 (Mo.App.1990). The Commission's determination that Searcy's pre-existing disability was not an industrial disability is against the overwhelming weight of the evidence. The Commission seems to have based this finding on the mere fact that Searcy was employed and working prior to the automobile accident. The mere fact that a claimant is working is not conclusive proof that a pre-existing condition does not affect a claimant's earning capacity or ability to work.

 Searcy's previous back condition clearly affected his ability to work. For the three years Searcy worked at McDonnell Douglas prior to the August 15, 1988 accident, he missed approximately a year of work due to the pre-existing back injuries. Furthermore, Searcy's position as a hydro operator required him to occasionally lift aluminum sheets weighing fifty pounds. Dr. Hertel had restricted Searcy to forty pounds because of Searcy's pre-existing back problems. Dr. Conrad, in his testimony, could not remember whether work restrictions had been placed on Searcy as a result of the previous disabilities. Yet, he felt certain that there had been restrictions because such restrictions were necessary. He believed Searcy's pre-existing condition severely limited the work Searcy could perform, particularly

the amount of weight he could lift and the amount of time he could remain standing. The undisputed fact that limitations were placed upon the type of work Searcy was permitted to perform demonstrates the existence of a disability adversely affecting his ability to work, i.e., an industrial disability. *Shipp v. National Vendors*, 862 S.W.2d 344, 345 (Mo.App.1993). Even though an employee is able to work everyday and suffers no loss of income, a disability which prevents the employee from performing all the normal duties of his employment is an industrial disability. *Id.* at 345–46.[1]

 Although the Commission's finding that Searcy's pre-existing disability was not industrial in nature is not supported by the evidence, the Commission's ultimate determination that the Second Injury Fund was not liable is supported by the record. The presence of a pre-existing industrial disability, in and of itself, is not enough to induce Second Injury Fund liability. To create Second Injury Fund liability, the pre-existing disability must combine with the disability from the subsequent injury in one of two ways: (1) the two disabilities combined result in a greater degree of disability than the sum of the degree of disability from the pre-existing condition and the degree of disability from the subsequent injury; or (2) the pre-existing disability combines with the disability from the second injury to create permanent total disability. § 287.220 RSMo 1986; *Brown v. Treasurer of Missouri*, 795 S.W.2d 479, 482 (Mo.App.1990). Searcy's pre-existing disability did not combine with his subsequent injury in this manner.

 Searcy's first point on appeal charges the Commission with error in finding the Second Injury Fund was not liable for his pre-existing permanent partial disability. This point demonstrates an erroneous conception of the purpose and function of the Second Injury Fund. The fund is never

---

1. We note that § 287.220.1 was amended by the legislature in 1993, Laws of Missouri, 1993, pages 779–80, so that a pre-existing permanent partial disability which triggers second injury fund involvement must be "of such seriousness as to constitute a hinderance or obstacle to employment or to obtaining reemployment if the

employee becomes unemployed...." Whether the standard established by the amended statute or the "industrial disability" standard expressed in *Shipp* was controlling in this case is irrelevant to the disposition of this appeal in view of the further findings of the commission.

liable for pre-existing disabilities. The Second Injury Fund was established in order to assure employers that the hiring of workers with a permanent partial disability would not expose the employer to liability for a greater amount of disability than that which resulted from a compensable work-related injury. The potential for such enhanced exposure exists first where a pre-existing disability, when combined with a compensable disability, results in a greater degree of disability than the sum of the two disabilities, that is, a synergistic enhancement in which the combined totality is greater than the sum of the independent parts. In such a case, the Second Injury Fund is liable only for the enhancement, that is, for the degree of disability which exceeds the sum of the two disabilities. The employer is liable only for the disability resulting from the work-related compensable injury, and the Second Injury Fund is liable only for the percentage of disability which exceeds the sum of the two disabilities by reason of their combination. *Brown v. Treasurer of Missouri,* 795 S.W.2d 479, 482 (Mo.App.1990). Where a pre-existing permanent partial disability combines with a work-related permanent partial disability to cause permanent total disability, the Second Injury Fund is liable for permanent total disability, but only after the employer has paid the compensation due on account of the disability resulting from the work-related injury. *Id.*

■ The Commission did not find any difference between the sum of the pre-existing disabilities and the work-related disability and the total disability resulting from a combination of the two. Indeed, as a general rule where the first and second injuries are to the same part of the body, as in this case, the second supplements the first rather than combining to create a greater disability than the sum of the two.[2]

In his second point, Searcy claims that his pre-existing disability combined with his subsequent injury resulted in permanent total disability. In his fifth point, Searcy claims the Commission erred in failing to find per-

manent total disability. The Commission's determination that Searcy did not sustain permanent total disability is supported by competent and substantial evidence.

■ The test for permanent total disability in Missouri is a claimant's ability to compete in the open labor market. *Carron v. Ste. Genevieve School Dist.,* 800 S.W.2d 64, 67 (Mo.App.1990). The central question is whether any employer in the usual course of business could reasonably be expected to employ the claimant in his present physical condition. *Id.* at 67.

■ Neither of the doctors who testified concluded that Searcy was totally physically disabled. In fact, Searcy, himself, thought there were several other jobs at McDonnell Douglas, not involving lifting, which he was capable of performing. The only evidence supporting a finding of permanent total disability was the testimony of Dr. Bernstein, a vocational expert. Dr. Bernstein believed Searcy was unemployable in the current labor market because of Searcy's physical limitations, his age and his limited education.

■ The evidence is in conflict. Conflicts in the evidence are to be resolved by the Commission. *Story v. Southern Roofing Co.,* 875 S.W.2d 228, 230 (Mo.App.1994); *Carroll v. Loy–Lange Box Co.,* 829 S.W.2d 86, 90 (Mo.App.1992). The Commission was free to determine that Searcy was not permanently totally disabled, and its determination is supported by substantial evidence. Furthermore, the Commission found that Dr. Bernstein's testimony was not credible. The Commission is responsible for passing on the credibility of the witnesses. *Carroll v. Loy–Lange Box Co.,* 829 S.W.2d at 88. Without Dr. Bernstein's testimony, no evidence supports Searcy's claim of permanent total disability.

Since the record supports the conclusion that Searcy was not permanently totally disabled, there is no basis for Second Injury Fund liability. Searcy's first, second and fifth points are denied.

---

**2.** Although there was some evidence of pre-existing disabilities to Searcy's arm and wrist, the finding that these were not industrial disabilities, implicit in the Commission's final award, is supported by Searcy's testimony that he had no problems with either hand or wrist.

## II

In his third point, Searcy complains the Commission based its determination that Searcy was not permanently totally disabled solely on his testimony of his willingness to work. Searcy maintains that willingness to work is not the proper standard for permanent total disability.

The record does not bear out Searcy's argument. The Commission based its decision, in part, on Searcy's testimony that there were actual jobs of which he was aware and which he thought he was capable of performing. Moreover, the Commission's decision was not based on one single factor, but on a number of factors, including the medical testimony of both doctors. Substantial and competent evidence properly supported a determination that Searcy is capable of competing in the open labor market. Point denied.

## III

In his fourth point, Searcy argues the Commission erred by finding Dr. Bernstein's testimony was not credible because there was no competent evidence reflecting upon Dr. Bernstein's credibility or impeaching it.

Searcy ignores a well established rule. The Commission is charged with the responsibility of passing upon the credibility of witnesses, and it may disbelieve testimony of a witness even though no contradictory or impeaching evidence is introduced. *Pullum v. Hudson Foods, Inc.,* 871 S.W.2d 94, 96 (Mo.App.1994). Point denied.

## IV

Searcy's final point deals with the subrogation rights of the Second Injury Fund. Since we affirm the Commission's decision as to the Second Injury Fund's liability, the issue of subrogation, as applied to the Second Injury Fund, is moot.

## V

McDonnell Douglas also appeals the decision of the Commission. It claims the Commission's determination that Searcy suffered 40 percent permanent partial disability as the result of the August 15, 1988 accident is not supported by substantial and competent evidence and is contrary to the overwhelming weight of the evidence.

The determination of a specific amount or percentage of disability awarded to a claimant is a finding of fact within the unique province of the Commission. *Jones v. Jefferson City School Dist.,* 801 S.W.2d 486, 489 (Mo.App.1990). The Commission is not dependent solely on medical evidence from expert witnesses when making its findings; the testimony of lay witnesses can constitute substantial evidence of the nature, cause, and extent of disability. *Story v. Southern Roofing Co.,* 875 S.W.2d 228, 230 (Mo.App.1994).

The testimony of Searcy, Dr. Hertel and Dr. Conrad, taken together, substantially supports a finding of 40 percent permanent partial disability attributable to the work-related accident. McDonnell Douglas simply points to contradictory evidence with which to undermine this determination. Conflicts in the evidence are to be resolved by the Commission. *Story* at 230. We will not substitute our judgment for that of the Commission where the Commission's decision is based on competent substantial evidence. Point denied.

The Commission's award is affirmed.

GRIMM, C.J., and REINHARD, J., concur.