

# In the Missouri Court of Appeals
# Eastern District

## DIVISION FOUR

| | | |
|---|---|---|
| PATRICK RYAN, | ) | No. ED112149 |
| | ) | |
| Appellant, | ) | Appeal from the Labor and |
| | ) | Industrial Relations Commission |
| vs. | ) | |
| | ) | |
| STATE OF MISSOURI, SECOND INJURY | ) | |
| FUND, | ) | |
| | ) | |
| Respondent. | ) | Filed: November 26, 2024 |

## Introduction

Patrick Ryan ("Ryan") appeals the Labor and Industrial Relations Commission's ("Commission") decision denying his claim against the Second Injury Fund ("Fund") for permanent total disability ("PTD") benefits. This appeal turns on the application of § 287.220.3[1] ("Subsection 3") of the Missouri Workers' Compensation Act ("Act"), which applies to all PTD claims against the Fund. Pertinent to this appeal is the first condition of Subsection 3, that provides a claimant is entitled to PTD benefits if the claimant has at least one qualifying pre-existing disability equaling a minimum of 50 weeks of permanent partial disability ("PPD"), and which is "[a] direct result of a compensable injury as defined in section 287.020." §§ 287.220.3(2)(a)a–287.220.3(2)(a)a(ii).

---

[1] All references are to Mo. Rev. Stat. Cum. Supp. (2015), unless otherwise stated.

The basic questions before this Court are: 1) whether a portion of a prior award of enhanced PPD can be considered in a subsequent PTD claim against the Fund in determining if the claimant has met the 50-week statutory threshold; and 2) whether a portion of a prior award of enhanced PPD can be considered a direct result of a compensable injury. This Court concludes the answer to both questions is: Yes. Accordingly, the Commission's award denying Ryan Fund benefits is reversed.

## Background

### A. The Missouri Workers' Compensation Act and the Second Injury Fund

Before discussing the facts and merits of Ryan's appeal, we review the purpose and function of the Act and the Fund. In 1925, the Act established the rights and responsibilities of employees and employers in the event an employee suffers an on-the-job injury that results in measurable disability to an identifiable part of the body or to the body as a whole ("BAW"). *See Gunnett v. Girardier Bldg. & Realty Co.*, 70 S.W.3d 632, 635 n.2 (Mo. App. E.D. 2002); § 287.190. The legislature amended § 287.220 in 1943 to establish the Fund to encourage the employment of the partially handicapped, that is, an employee with one or more pre-existing disabilities. *See Fed. Mut. Ins. Co. v. Carpenter*, 371 S.W.2d 955, 957 (Mo. 1963); *see also Lawrence v. Treasurer of State—Custodian of Second Injury Fund*, 470 S.W.3d 6, 9 n.1 (Mo. App. W.D. 2015). The Fund's framework ensures "[t]he employer is liable only for the disability resulting from the work-related compensable injury, and the [Fund] is liable only for the percentage of disability which exceeds the sum of the two disabilities by reason of their combination." *Searcy v. McDonnell Douglas Aircraft Co.,* 894 S.W.2d 173, 178 (Mo. App. E.D. 1995) (overruled on other grounds). The Fund becomes liable when the pre-existing disability is combined with the compensable disability from the primary injury and results "in a greater degree

2

of disability than the sum of the two disabilities, that is, a synergistic enhancement in which the combined totality is greater than the sum of the independent parts." *Id*. As a result, "[t]he employer is liable only for the disability resulting from the work-related compensable injury, and the Second Injury Fund is liable only for the percentage of disability which exceeds the sum of the two disabilities by reason of their combination." *Id*.

For purposes of Fund liability, a claimant's injuries are characterized as PPD or PTD. PPD "is a disability that is permanent in nature and partial in degree." *Jim Plunkett, Inc. v. Ard*, 499 S.W.3d 333, 339 (Mo. App. W.D. 2016) (internal quotations and citation omitted). Conversely, "[PTD] arises when the employee's injury is such that the employee has become permanently unemployable on the open labor market and is entitled to benefits through the remainder of the employee's lifetime." *Nivens v. Interstate Brands Corp*., 585 S.W.3d 825, 835 (Mo. App. W.D. 2019).

Until 2013, Missouri workers could make claims for PPD and PTD benefits from the Fund. That changed when the legislature amended § 287.220 to "limit the number of workers eligible for fund benefits because the Fund was insolvent." *Treasurer of State v. Parker*, 622 S.W.3d 178, 181 (Mo. banc 2021). The legislature created two subsections: Subsection 2 is limited to compensable work injuries occurring before January 1, 2014, and Subsection 3, the provision at issue here, is limited to compensable work injuries occurring after January 1, 2014. *Id*.

The two subsections outline two different frameworks to determine Fund benefits. Subsection 2 retained the pre-amendment framework for Fund benefits, requiring an employee to demonstrate the pre-existing disability was a hindrance or obstacle to employment and, if the disability was to the BAW, at least 50 weeks or if the disability was to a major extremity, at least fifteen percent. § 287.220.2. Conversely, Subsection 3 eliminated all PPD claims against the Fund

3

and limited the Fund's liability to PTD claims that could satisfy the new, more stringent requirements of Subsection 3 at issue here. And Subsection 3 omitted both the "hindrance or obstacle" requirement and any reference to a minimum percent of disability. *Parker*, 622 S.W.3d at 181; *compare* § 287.220.2 *with* § 287.220.3.

### B. Factual Background relevant to this appeal

Beginning in eighth grade, Ryan worked in various trades over five decades. After high school, Ryan worked at Burlington Northern Railroad doing heavy labor. He then worked at Quincy Soybean for twenty-five years loading, unloading, and repairing river barges. Next, Ryan worked at Pillsbury General Mills for approximately four years doing machinery repairs and general maintenance work. Last, Ryan worked for the Hannibal Board of Public Works ("Employer") for approximately ten years before the 2015 primary injury giving rise to this case. Throughout his career, Ryan suffered several work-related injuries.

### 1. 2004 - right knee

In 2004, at Pillsbury General Mills, Ryan suffered an injury to his right knee. Ryan underwent several surgeries and eventually had a knee replacement. The 2004 right knee injury resulted in a workers' compensation settlement for 75% of the right knee or 120 weeks of PPD.

### 2. 2007 - left shoulder and cervical spine

In 2007, while working for Employer, Ryan hurt his left shoulder and cervical spine when he fell six to seven feet onto a concrete floor. Ryan eventually underwent surgery for each injury. He brought claims against Employer for the primary injuries and against the Fund for the disability that resulted from his pre-existing 2004 injury in combination with the primary injuries to his left shoulder and cervical spine. Ryan settled with Employer for 25% PPD (58 weeks) of the left shoulder and 25% PPD (100 weeks) of the BAW referable to the cervical spine.

Ryan's claims against the Fund proceeded to trial. The Administrative Law Judge ("ALJ") entered its award in favor of Ryan. Consistent with the settlement, the ALJ found the 2007 injury caused 25% PPD (58 weeks) to the left shoulder and 25% of the BAW (100 weeks) for the cervical spine. The ALJ found Ryan had a 75% pre-existing disability to the right knee (120 weeks) from the 2004 injury. The ALJ concluded the 2004 pre-existing injury and 2007 primary disabilities combined for 278 weeks of PPD or 69.5% of the BAW. The ALJ then awarded to Ryan and against the Fund enhanced PPD of 15% or 42 weeks on top of the 278 weeks pursuant to § 287.220, RSMo 2011. The Fund did not appeal the award and paid it.

### 3. 2011 - right shoulder and spine

Ryan's third work-related injury occurred while working for Employer in 2011. Ryan fell down a flight of stairs, landed on his back, and injured his right shoulder and spine. He brought claims against Employer and the Fund. Ryan and Employer settled the right shoulder claim for 20% PPD or 46.4 weeks and his spine claim for 20% PPD or 80 weeks of the BAW. Ryan's claim against the Fund then proceeded to trial to determine the disability that resulted from the combination of his 2011 primary injuries and his 2004 and 2007 pre-existing disabilities.

ALJ David Zerrer ("ALJ Zerrer") [2] entered an award in favor of Ryan. ALJ Zerrer initially found Ryan had 404.4 weeks of total disability which derived from his 2011 primary claims and all of his pre-existing PPD's: (1) 2011 right shoulder – 46.4 weeks, (2) 2011 BAW at the spine – 80 weeks, (3) 2004 left shoulder – 58 weeks, (4) 2004 BAW at the cervical spine – 100 weeks, (5) 2007 right knee – 120 weeks.

Then ALJ Zerrer concluded the 2004, 2007, and 2011 disabilities combined for greater disability than their simple sum and awarded enhanced PPD of 15% to the 404.4 weeks of total

---

[2] Typically, this Court refrains from including the ALJ's names in its decisions. However, we do so in this case to avoid confusion when discussing Ryan's previous claims and awards.

disability for an enhanced PPD award of 60.66 weeks against the Fund pursuant to § 287.220, RSMo 2011. Again, the Fund did not appeal the 2011 award and paid it.

### 4. The case at bar: 2015 - right shoulder and cervical spine

Ryan's primary injuries at issue here occurred on August 14, 2015, when he hurt his spine and right shoulder handling a heavy object at work. He brought claims against Employer and the Fund. Ryan and Employer settled the cervical spine claim for an approximate 12.5% or 50 weeks of the BAW and 12.5% or 29 weeks of the right shoulder. Ryan's claim against the Fund proceeded to trial in which Ryan asserted he was now PTD based on the disability from the 2015 primary injuries together with his 2004, 2007, and 2011 pre-existing disabilities.

Ryan supported his claim of PTD with a medical expert who examined him on June 6, 2017 and testified by deposition. The medical expert opined Ryan is PTD as a direct result of his 2015 primary injuries in combination with his pre-existing disabilities. The medical expert based his opinion on his previous examinations of Ryan in connection with his 2004 and 2011 injuries and a 2017 physical examination and assessment of Ryan's right knee, cervical spine, lumbar spine, and both shoulders.

Ryan also supported his claim of PTD with a vocational rehabilitation expert who evaluated Ryan's employability. The vocational rehabilitation expert testified by deposition Ryan was unable to return to his prior employment and unable to engage in any substantial gainful employment available in the national economy as a result of his 2015 primary injuries and his 2004, 2007, and 2011 pre-existing injuries. The Fund presented no witnesses or exhibits at the hearing.

On June 15, 2022, ALJ Jason Tilley ("ALJ Tilley") issued an award in favor of Ryan. ALJ Tilley first listed Ryan's pre-existing PPD's as follows:

a. 2004 right knee – 75% or 120 weeks-paid by employer

b. 2007 left shoulder – 25% or 58 weeks-paid by employer

c. 2007 cervical spine – 25% or 100 weeks-paid by employer

d. 2007 enhanced PPD – 42 weeks-paid by Fund

e. 2011 right shoulder – 20% or 46.4 weeks-paid by employer

f. 2011 spine – 20% or 80 weeks-paid by employer

g. 2011 enhanced PPD – 60.66 weeks-paid by Fund

ALJ Tilley then applied a portion of the 42 weeks of enhanced PPD awarded in 2007 to the 2007 cervical spine PPD, increasing that PPD from 100 weeks to 115 weeks; and to the 2007 left shoulder PPD, increasing it from 58 weeks to 66.2 weeks.

ALJ Tilley then turned to Ryan's 2011 injuries and disabilities. First, he acknowledged Ryan's 2011 injuries resulted in PPD of 20% BAW or 80 weeks of the spine and 20% PPD or 46.4 weeks of the right shoulder. Then, pursuant to § 287.220, RSMo 2011, ALJ Tilley added a portion of the 60.66 weeks of enhanced PPD awarded in 2011 to each of those two disabilities. Specifically, ALJ Tilley added 12 weeks of the 60.66 weeks of enhanced PPD to the 80 weeks of disability to the spine for a total of 92 weeks of PPD. ALJ Tilley determined the right shoulder was 11.5% of Ryan's total disabilities (46.4 weeks right shoulder ÷ 404.4 weeks total disabilities) and multiplied the 60.66 weeks of enhanced PPD by that percentage (11.5% x 60.66 = 6.98). Then, ALJ Tilley added "6.98 weeks of disability compensation paid by the Fund" to the 46.4 weeks of the right shoulder such that the pre-existing disability of the right shoulder now equaled 53.38 weeks. ALJ Tilley determined "[t]he medically documented pre-existing disability attributable to the right shoulder is 46.4 weeks of disability compensation paid by the employer and 6.98 weeks of disability compensation paid by the Fund." ALJ Tilley found all of Ryan's pre-existing

7

disabilities to be a direct result of compensable injuries as defined in § 287.020, and entered an award in favor of Ryan and against the Fund for PTD benefits.

The Fund appealed the award and filed an Application for Review with the Commission. The Fund alleged the ALJ erred: (1) in adding a portion of the 2011 enhanced PPD to the 2011 right shoulder disability such that it reached the 50-week statutory threshold; (2) in finding the right shoulder disability could be properly considered under the second condition of Subsection 3[3]; and (3) the ALJ erred in finding Ryan's medical expert's testimony credible.

The Commission reversed the award. The Commission found Ryan had the following pre-existing disabilities at the time of the 2015 primary injury:

    a.  75% PPD of the right knee (120 weeks);

    b.  25% PPD of the left shoulder (58 weeks);

    c.  25% PPD of the BAW referable to the cervical spine (100 weeks);

    d.  20% PPD of the right shoulder (46.4 weeks); and

    e.  20% PPD of the BAW referable to the spine (80 weeks).

The Commission found the 2011 right shoulder disability did not reach the 50-week threshold and, therefore, was a non-qualifying disability under § 287.220.3(2)(a)a. The Commission concluded:

> [T]he Fund's liability for the synergistic combination or loading factor required the intervention of an independent or superseding cause in the form of one or more pre-existing disabilities. Because the synergistic disability previously assessed to the Fund did not directly result from a compensable injury, there is no statutory authority to add any portion of that loading factor to determine whether [Ryan's] pre-existing disabilities meet the 50-week threshold.

---

[3] To satisfy the second condition of Subsection 3, a claimant must show he "thereafter sustains a subsequent compensable work-related injury that, when combined with the preexisting disability … results in [PTD]…." § 287.220.3(2)(a)b.

The Commission further found that "at the time of the 2015 primary injury[,] [Ryan] had 20% PPD of the right shoulder (46.4 weeks), all of which was a direct result of his 2011 compensable injury." The Commission found credible and persuasive evidence Ryan is PTD, and Ryan's total disability resulted from the combination of his 2015 primary injuries and his pre-existing work-related disabilities. However, the Commission found Ryan failed to carry his burden of proof under § 287.220.3 for PTD benefits against the Fund.

This appeal follows.

**Standard of Review**

This Court's review of the Commission's decision is governed by the Missouri Constitution, article V, section 18, and § 287.495. *Krysl v. Treasurer of Missouri*, 642 S.W.3d 312, 315 (Mo. App. E.D. 2022). "Article V, section 18, provides for judicial review of the Commission's award to determine whether the decision is authorized by law and whether it is 'supported by competent and substantial evidence upon the whole record.'" *Id*. Pursuant to § 287.495, this Court must affirm the decision "unless the Commission acted in excess of its powers, the award was procured by fraud, the facts do not support the award, or insufficient competent evidence exists to warrant the making of the award." *Id*. In reviewing the Commission's decision, "we must consider the whole record to determine whether it contains sufficient competent and substantial evidence to support the award, and we will set aside the Commission's award only if it is contrary to the overwhelming weight of the evidence." *Maness v. City of De Soto*, 421 S.W.3d 532, 536–37 (Mo. App. E.D. 2014).

"We defer to the Commission on issues of fact, credibility of witnesses, and weight to be given conflicting evidence." *Id.* at 537. However, "we review *de novo* the Commission's interpretation of the workers' compensation statute and its application of the law without deference

9

to the Commission's findings." *Marberry v. Treasurer of Missouri*, 635 S.W.3d 586, 590 (Mo. App. E.D. 2021).

## Discussion

Ryan's three points on appeal center on whether the enhanced PPD awarded to Ryan and attributed to his 2011 pre-existing disabilities, including his 2011 right shoulder, should be considered in determining whether the pre-existing 2011 right shoulder injury is a qualifying disability pursuant to Subsection 3. In Point I, Ryan contends the Commission erred in denying him PTD benefits by finding the 2011 right shoulder injury was not a qualifying injury by considering the 2011 right shoulder disability in isolation from the enhanced PPD. In Point II, Ryan claims the right shoulder disability, after including a portion of the enhanced PPD, satisfies the "direct result" requirement of § 287.220.3(2)(a)a(ii). In Point III, Ryan contends the Commission's decision to treat the right shoulder disability in isolation from the enhanced PPD is inconsistent with § 287.220, medical knowledge, case law, and common sense.

This Court finds Points I and II dispositive, and holds the enhanced PPD benefits from a prior work-related injury should be considered under the first condition of Subsection 3 in a subsequent PTD claim against the Fund. Therefore, we do not reach the merits of Point III.

For ease of analysis, we discuss Points I and II together and hold Ryan's 2011 right shoulder injury was a qualifying, compensable injury under Subsection 3.

## Analysis

The issues before this Court are ones of first impression: (1) whether a portion of a prior award of enhanced PPD can be considered in a subsequent PTD claim against the Fund in determining if it meets the 50-week statutory threshold; and (2) whether a portion of a prior award of enhanced permanent partial disability can be considered a direct result of a compensable injury.

10

In analyzing the issues on appeal, this Court considered the Supreme Court of Missouri's recent holdings in *Parker*, 622 S.W.3d 178 and *Klecka v. Treasurer of Missouri*, 644 S.W.3d 562 (Mo. banc 2022). "The import of the *Parker* and *Klecka* decisions is that there is a legislative-directed departure from earlier precedent which had allowed consideration of all preexisting disabilities in the determination of PTD." *Adams v. Treasurer of State*, 662 S.W.3d 8, 15 (Mo. App. W.D. 2022). In *Parker*, the issue before the Supreme Court was whether the "second condition, [§ 287.220.3(2)(a)b], can be met by showing the primary injury resulted in PTD when combined with all of the employee's disabilities (regardless of whether those disabilities meet the first condition)." *Parker*, 622 S.W.3d at 182. *Parker* analyzed the criteria set forth in § 287.220.3 and held that non-qualifying preexisting disabilities cannot be considered in determining whether a claimant satisfies the second condition. *Parker*, 622 S.W.3d at 182.

*Klecka* followed *Parker*. There, the Supreme Court analyzed whether the Commission erred in determining Klecka failed to establish he was entitled to PTD benefits from the Fund under § 287.220.3. *Klecka*, 644 S.W.3d at 566. *Klecka* clarified that a claimant is entitled to PTD benefits if he demonstrates his alleged PTD was caused by a combination of the primary injury and qualifying conditions without consideration of non-qualifying disabilities. *Id*. at 567.

Neither *Parker* nor *Klecka* analyzed or took any position as to whether a pre-existing condition with an enhanced level of disability, such as the 2011 right shoulder disability, could be considered a qualifying disability which is a direct result of a compensable work-related injury. Therefore, we find *Parker* and *Klecka* are not instructive on this issue.

*Adjudication of Ryan's 2011 claim*

Before turning to the subject of this appeal, that is, Ryan's 2015 PTD claim against the Fund, we must detail how Ryan's 2011 claim was adjudicated because such determination is

11

critical to our analysis.

ALJ Zerrer entered an award in Ryan's favor and against the Fund. Consistent with the settlement Ryan reached with Employer, ALJ Zerrer found the primary right shoulder injury caused 20% PPD (46.4 weeks) and that, overall, Ryan had 404.4 weeks of PPD accumulated from all of his pre-existing disabilities along with the primary shoulder and spine injury. To that 404.4 weeks, ALJ Zerrer then added a 15% enhanced PPD as prescribed by § 287.220, RSMo 2011. This enhanced PPD increased Ryan's recovery by 60.66 weeks, all against the Fund.

Enhanced PPD is sometimes referred to as a "loading factor" or "multiplicity factor," which "is a special or additional allowance for cumulative disabilities resulting from a multiplicity of injuries." *Kolar v. First Student, Inc.*, 470 S.W.3d 770, 776 (Mo. App. E.D. 2015). Put differently, enhanced PPD is Missouri law's recognition that when a worker has multiple injuries and disabilities, each individual injury and disability does not exist in a vacuum such that the employee likely suffers greater functional loss than the simple sum of the individual disabilities.

*Ryan's Points on appeal*

With the foregoing background, we turn to the 2015 right shoulder and cervical spine injuries ("Primary Injuries") Ryan sustained while working for Employer. Ryan settled his Primary Injuries with Employer and then proceeded to trial on his claim for PTD benefits against the Fund under Subsection 3. Ryan argued, pursuant to Subsection 3, his Primary Injuries, in combination with his prior disabilities from 2004, 2007, and 2011 rendered him PTD.

There is no dispute Ryan is PTD due to the myriad of pre-existing injuries and his 2015 Primary Injuries. The parties also do not dispute Ryan's prior disabilities were the result of compensable injuries and each of those injuries, except for his 2011 right shoulder injury, resulted in more than 50 weeks of PPD. However, the Commission, in denying Ryan's claim, limited the

12

right shoulder's PPD to the settlement agreement between Ryan and Employer, and thus ignored the PPD enhancement awarded on top of the 2011 individual disabilities, including the right shoulder, in the final award which the Fund did not appeal and simply paid.

To determine if Ryan is entitled to PTD benefits, he must satisfy the criteria set forth in § 287.220.3. Ryan's injury occurred after January 1, 2014, thus, Subsection 3 applies to his 2015 claim. *See Parker*, 622 S.W.3d at 181. Under the first condition of Subsection 3, a claimant must have *at least* one qualifying pre-existing disability that is medically documented, equaling a minimum of 50 weeks PPD, and which meets one of the four categories listed in § 87.220.3(2)(a)a(i)-(iv). Relevant to this appeal is sub-criteria (ii): a pre-existing injury that is "[a] direct result of a compensable injury as defined in section 287.020[.]"

Next, the claimant must show he "thereafter sustains a subsequent compensable work-related injury that, when combined with the preexisting disability … results in [PTD]…." § 287.220.3(2)(a)b. "The 'subsequent compensable work-related injury' is often referred to as the 'primary injury,'" which in this case refers to Ryan's 2015 cervical spine and right shoulder injuries. *Parker*, 622 S.W.3d at 181.

A. *The medically-documented disability must meet the 50-week threshold.*

We first decide whether the 2011 right shoulder disability meets the 50-week statutory threshold. The Commission's approach ignores the enhanced PPD awarded in connection with Ryan's 2011 injuries and instead focuses solely on the settlement between Employer and Ryan. This approach contravenes the plain language of Subsection 3 which no longer considers *percentages* of disability as a threshold to Fund liability and directs this Court to look only to medically documented pre-existing disabilities that meet a minimum 50 weeks of PPD.

Nothing in Subsection 3 requires this Court to consider only a claimant's settlement with an employer over the final award that incorporates those settlement figures and adjudicates a claimant's claim against the Fund. To conclude otherwise would require this Court to ignore the amendments to the statute and impermissibly add words to Subsection 3, violating the legislature's requirement to strictly construe workers' compensation statutes. *See* § 287.800.

Moreover, the Fund correctly points out the determination of a specific amount or percentage of disability awarded to a claimant against the employer, in this case 46.4 weeks of PPD, is a finding of fact within the special province of the Commission. *See Collins v. Century Ready Mix, Inc.*, 678 S.W.3d 178, 188 (Mo. App. W.D. 2023). But, the Fund ignores the fact the **total amount** of disability awarded against the employer **and** the Fund for the 2011 right shoulder was established in the 2011 final award, which the Fund did not appeal and paid.

When made in a settlement approved by an ALJ or the Commission, or in an award entered by an ALJ or the Commission, "the percentage of disability **shall be** conclusively presumed to continue undiminished." § 287.190.6(1) (emphasis added). There is no legal or factual doubt that the additional 60.66 weeks of enhanced PPD found and awarded against the Fund after a trial on Ryan's 2011 work-related injury **exists** and **continues to exist**. It is also well-established that "[a] workers' compensation award adjudicates the parties' rights as effectively as a judgment" and, like any final judgment, it "is not open to collateral attack in respect of its validity or conclusiveness of the matters adjudicated." *Pace v. City of St. Joseph*, 458 S.W.3d 870, 874 (Mo. App. W.D. 2015). The Fund was a party to Ryan's 2011 claim and elected not to appeal the award, rendering the 2011 award final and binding on the parties thirty days from the date of the final award. *See* § 287.495.1 ("[A] final award of the commission shall be conclusive and binding unless either party to the dispute shall, within thirty days from the date of the final award, appeal the award to

14

the appellate court."). Therefore, the disability awarded to the 2011 right shoulder disability is binding and cannot be disturbed or modified as it is a final, unappealable workers' compensation award. *See id.*

The enhanced PPD, derived from the simple sum of all of Ryan's individual disabilities, including the right shoulder, is part of the 2011 award against the Fund and should have been considered by Commission. Case law is clear that the enhancement is for *additional PPD* which exceeds the sum of the individual disabilities, current and prior, due to them coexisting and combining. *Searcy*, 894 S.W.2d at 178. Essentially, each of those disabilities **is worse** in combination with the others. *Id*. The Fund owes the disability **which exceeds the simple sum** of disabilities by reason of their combination. *Id*. As relevant to this appeal, the 2011 final award provides that a "multiplicity factor of 15% should be added to the total simple sum of Ryan's disabilities as an enhanced permanent partial disability[,]" which yielded 60.66 weeks of enhanced PPD (404.4 weeks x .15 = 60.66 weeks of PPD).

In addition, the express language of the statute supports the enhanced PPD should be considered. When § 287.220 was amended in 2013, new language was added to determine if a claimant is entitled to PTD benefits. Subsection 3 now requires a claimant to satisfy two conditions, and any reference to a minimum percent of disability was omitted. *See Parker*, 622 S.W.3d at 181; compare § 287.220, RSMo 2011 *with* § 287.220.3, RSMo 2015. In pertinent part, the first condition of Subsection 3 requires: "[a]n employee has a medically documented preexisting disability **equaling** a minimum of fifty weeks of permanent partial disability….". (emphasis added). The term "equaling" was added, but it is not defined in § 287.220. When a statutory term is not defined, courts "must ascertain the intent of the legislature by considering the plain and ordinary meaning of the terms and give effect to that intent if possible." *Cosby v.*

*Treasurer of State*, 579 S.W.3d 202, 206 (Mo. banc 2019). It is presumed that each word, clause, sentence, and section of a statute will be given meaning and that the legislature did not insert superfluous language. *Macon Cnty. Emergency Services Bd. v. Macon Cnty. Comm'n*, 485 S.W.3d 353, 355 (Mo. banc 2016). We "will not add words to a statute under the auspice of statutory construction." *Id*. In the absence of statutory definitions, as in this case, this Court consults Webster's Third New International Dictionary to determine the plain and ordinary meaning of the terms. *AAA Laundry & Linen Supply Co. v. Dir. of Revenue*, 425 S.W.3d 126, 132 (Mo. banc 2014).

In this context, the applicable definition of "equal" is "to be identical in value to <two times two ~s four>."[4] *Webster's Third New Int'l Dictionary of the English Language* 767 (3d ed. 2002). In other words, the legislature's use of the word "equaling" suggests a total sum. As such, incorporating the enhancement awarded to the 46.4 weeks of PPD does not conflict with the threshold language of Subsection 3. Further, as we have stated previously, nothing in Subsection 3 requires this Court to consider only a settlement agreement between a claimant and employer over a final award in determining which pre-existing disabilities meet the 50-week threshold. To conclude otherwise, this Court would have to ignore the amendments to the statute and would require us to impermissibly add words to Subsection 3, violating the legislature's requirement to strictly construe workers' compensation statutes. *See* § 287.800.

---

[4] Although there are many definitions of the term "equal," this Court is not required to select the first definition. Rather, the rules of statutory construction instruct this Court to consider both the dictionary's definitions and "the *context* of the *entire* statute in which it appears" to determine the applicable meaning. *Dubuc v. Treasurer of State*, 659 S.W.3d 596, 603 (Mo. banc 2023) (quoting *Swafford v. Treasurer of Mo.*, 659 S.W.3d 580, 583 (Mo. banc 2023)) (emphasis removed and added). The only applicable definition in the context of the entire statute is the one refenced in this opinion as it adheres to the presumption "that each word, clause, sentence, and section of a statute will be given meaning and that the legislature did not insert superfluous language." *Macon Cnty. Emergency Servs. Bd.*, 485 S.W.3d at 355.

Accordingly, because the 2011 award against the Fund is a binding and final award, and the statutory language is clear and unambiguous, the enhanced PPD — as determined by ALJ Zerrer (60.66 weeks) and allocated by ALJ Tilley (11.5% of 60.66 weeks = 6.98 weeks) (46.4 weeks plus 6.98 weeks = 53.38 weeks — should be considered in determining if the right shoulder disability is a qualifying disability under Subsection 3. Therefore, the pre-existing right shoulder injury is a medically documented disability that meets the 50-week threshold in § 287.220.3(2)(a)a.

B. *The medically documented disability must also meet one of the four listed criteria in § 287.220.3(2)(a)a(i)-(iv)*

We next turn to whether the 2011 right shoulder disability meets one of the four listed criteria in § 287.220.3(2)(a)a(i)-(iv), specifically, sub-criteria (ii).[5] The Commission, in pertinent part, found:

> [T]he Fund's liability for PPD, also referred to as the loading factor, in each of [Ryan's] prior cases **did not directly result from a compensable injury**. Rather,

---

[5] This Court finds it important to note this issue was not raised in the Fund's Application for Review. 8 CSR 20-3.030(3)(A) makes clear that:

> An application for review of any final award, order, or decision of the [ALJ] shall state specifically the reason the applicant believes the findings and conclusions of the [ALJ] on the controlling issues are not properly supported. It shall not be sufficient merely to state that the decision of the [ALJ] on any particular issue is not supported by competent and substantial evidence. The allegations of error in an application for review are not an opportunity for early briefing, but rather serve to notify the commission and opposing parties of the nature of the issues that will be addressed on appeal.

Recent case law also makes clear:

> [E]ven if 8 CSR 20-3.030(3)(A) and its developed case law did not preclude the Commission from vacating the non-appealed PTD award—an issue we do not yet decide— the Commission exceeded its power in doing so without affording [Ryan] appropriate notice and opportunity to be heard. We note again that [§] 287.480 directs the Commission to make and file awards "in like manner as specified in [§] 287.470," and [§] 287.470 in turn requires "due notice to the parties interested."

*Helmig v. Springfield R-12 Sch. Dist.*, 688 S.W.3d 315, 325 (Mo. App. S.D. 2024) (citations omitted).

The Commission's award outlines the issues the Fund raised in its application for review. However, none of the issues expressly raised by the Fund concern whether the 2011 enhanced right shoulder injury was a "direct result" of a compensable injury. Nonetheless, the Commission decided the issue by construing the term "direct result" without giving Ryan and his counsel appropriate notice and an opportunity to be heard on the issue. Thus, the Commission exceeded its powers when it decided the non-appealed issue without giving the parties an opportunity to be heard. *See id.* Because neither party raised the inappropriateness of the Commission raising the "direct result" issue in its award, but fully briefed the question before this Court, we evaluate the issue on its merits.

the Fund's liability for the synergistic combination or loading factor required the **intervention of an independent or superseding cause** in the **form of one or more pre-existing disabilities**. (emphasis added).

Ryan argues the enhanced PPD has no bearing on the determination of whether the right shoulder disability is "[a] direct result of a compensable injury" under § 287.220.3(2)(a)a(ii) ("sub-criteria (ii)"). For its part, the Fund contends "the Commission properly found that [Ryan's] prior Fund settlements compensated for the difference and enhanced disability between multiple prior disabilities" and, therefore, such enhanced level of disability is not the direct result of a single, compensable work-related injury.

In analyzing the issue, the Commission interpreted the meaning of "compensable injury" and "direct result." Because the Act does not define "direct result," the Commission looked to the definition in the context of civil tort law and concluded that "'[d]irect result' is synonymous with 'proximate cause,' or a 'cause which directly, or with no mediate agency, produces an effect.'"

We find the Commission improperly defined the term "direct result" and failed to adhere to the canons of statutory interpretation. As stated previously, when a statutory term is not defined, courts "must ascertain the intent of the legislature by considering the plain and ordinary meaning of the terms and give effect to that intent if possible." *Cosby*, 579 S.W.3d at 206 (citation omitted). "In determining the intent and meaning of statutory language, the words must be considered in context and sections of the statutes in pari materia, as well as cognate sections, must be considered in order to arrive at the true meaning and scope of the words." *Id*. (citation omitted). "Where the language of a statute is unambiguous, statutory construction is unnecessary, and we give effect to the language as written." *Townsend v. Jefferson Cnty. Sheriff's Dep't*, 602 S.W.3d 262, 265 (Mo. App. E.D. 2020).

Here, "direct result" is unambiguous and this Court finds the 2011 right shoulder injury is a direct result of compensable injuries as defined in § 287.020. The Fund agrees with this conclusion and concedes "there is no dispute that [Ryan's] pre-existing 2011 right shoulder disability was the direct result of a compensable injury as defined by the statute." In dispute is the Commission's finding that the enhanced PPD attributed to the 2011 right shoulder disability *is not* a direct result of a compensable injury because the enhancement or loading factor is a superseding cause in the *form of a pre-existing condition*. This Court holds this finding is unsupported by case law and contravenes the purpose of the Fund. No binding authority has defined a pre-existing condition as a superseding cause in this context. The legislative mandate to strictly construe Subsection 3 does not permit this Court to define a pre-existing disability contrary to the intent of the statute.[6] The enhanced PPD only exists because an injury occurred to the right shoulder and cannot be separated or be considered in isolation. As referenced above, the PPD weeks awarded to the right shoulder disability and enhanced PPD were all part of *one* award that is final and unappealable. In other words, without the 2011 primary injury to the right shoulder, there is no enhanced PPD derived in part from that right shoulder. Therefore, the enhanced PPD at issue here is a direct result of the 2011 work injury to the right shoulder.

Accordingly, this Court holds Ryan's right shoulder injury equaled more than 50 weeks of PPD and that PPD was the direct result of a work-related injury. Because the Commission has already determined Ryan is PTD as a result of his prior work disabilities and his last work accident, the Fund is responsible for Ryan's PTD benefits.

Points I and II are granted.

---

[6] It is important to note the Fund failed to put forth any argument relating to the Commission's interpretation of "direct result" or the application of proximate cause.

## Conclusion

The Commission's award is reversed and remanded with instructions that it grant

Claimant PTD benefits from the Fund.

_____
Michael S. Wright, Judge


James M. Dowd, J. concurs and
John P. Torbitzky, P.J. dissents in a separate opinion.



# In the Missouri Court of Appeals
# Eastern District

PATRICK RYAN, ) No. ED112149
)
    Appellant, ) Appeal from the Labor and Circuit Court
) Industrial Relations Commission
v. )
)
STATE OF MISSOURI, SECOND )
INJURY FUND, )
)
    Respondent. ) Filed: November 26, 2024

**Dissenting Opinion**

I am sympathetic to Patrick Ryan's position. Ryan worked doing heavy labor in numerous jobs over several decades. On multiple occasions during his career, Ryan was injured during the course of his employment. Ryan injured his right knee in 2004, his left shoulder and spine in 2007, and his right shoulder and spine in 2011. He received workers' compensation payments from his employer for the injuries sustained in 2004, 2007, and 2011. He also received permanent partial disability payments from the Fund in 2007 and 2011. And his most recent injury, a 2015 injury to his shoulder and spine, rendered him permanently and totally disabled. Under this factual scenario, I understand why the principal opinion believes Ryan should be entitled to payments from the Fund.

But, given the state of the law and the testimony below, I must dissent. Pursuant to § 287.220.3, Ryan is entitled to permanent total disability payments from the Fund only if he has

1

"a medically documented preexisting disability equaling a minimum of fifty weeks of permanent partial disability." The Supreme Court's opinions in *Parker* and *Klecka* make clear that non-qualifying disabilities cannot be considered in the determination of permanent total disability. As the principal opinion points out, "there is a legislative-directed departure from earlier precedent which had allowed consideration of all preexisting disabilities in the determination of PTD." *Adams v. Treasurer of Mo.*, 662 S.W.3d 8, 15 (Mo. App. W.D. 2022).

Ryan's medical expert testified that Ryan is permanently and totally disabled when considering his primary 2015 injuries together with *all* of his prior injuries. The medical expert did not provide any testimony that would allow this Court to determine Ryan was permanently totally disabled without consideration of his 2011 shoulder injury. His opinion was premised upon the determination that *all* of Ryan's prior injuries combined with the primary injuries to result in permanent total disability.

Yet, not all of Ryan's prior injuries meet the § 287.220.3 fifty-week minimum. The Commission determined that Ryan's 2011 right shoulder injury equaled 46.4 weeks of permanent partial disability. As a result, the injury is a non-qualifying injury. Because Ryan's medical expert relied on this non-qualifying injury in determining that Ryan was permanently totally disabled, Ryan is not entitled to payments from the Fund based on the current version of § 287.220.3 and the Supreme Court's decisions in *Parker* and *Klecka*.

To avoid this seemingly unfair result, Ryan argues that the number of weeks for his right shoulder disability should be increased by a portion of the 2011 enhanced PPD payment made by the Fund because some portion of that payment was based on the injury to his shoulder. The principal opinion agrees with this argument, but I see no basis for it in the language of the statute. At the center of this dispute is the question of whether a prior "enhanced PPD"

determination may be used to add additional weeks of compensation to an otherwise non-qualifying injury. In this case, the principal opinion holds that 6.98 weeks of compensation from the Commission's 2011 award of "enhanced PPD" should be added to the 46.4 weeks of compensation for the right shoulder injury, thereby bringing the 2011 right shoulder injury above the fifty-week threshold.

Enhanced PPD is a concept from the pre-2013 version of the Fund. As the principal opinion notes, this concept also is variously referred to in caselaw as a loading factor or a multiplicity factor. In the Fund's pre-2013 iteration, an employee could seek payments for permanent partial disability from the Fund. *Pierson v. Treasurer of Mo.* 126 S.W.3d 386, 388-89 (Mo. banc 2004). To be eligible for these payments, an employee needed to demonstrate that a preexisting disability combined with a new injury to create a disability that was greater than the sum of its parts. *Id.* at 389. Under the prior statutory scheme, the employer was "liable only for the amount of disability caused by the current injury[,]" and the Fund was liable for "the amount of the increase in disability caused by the synergistic effect of the two injuries." *Id.* In most cases, the "synergistic effect" was determined as a percentage of the two disabilities and was called "enhanced PPD," the "loading factor" or the "multiplicity factor." However it was designated, the enhanced PPD number determined the amount of the Fund's liability.

Under this system there were three distinct classes of injury.[1] There was the pre-existing injury, for which no one was liable.[2] There was the primary injury, for which only the employer was liable. And there was the additional injury caused by the "synergistic effect" of the two other classes of injury, for which only the Fund was liable. Each of these injuries would be assigned a

---

[1] There still are three distinct classes of injury in the new version of the statute. The difference being that the "synergistic effect" must now lead to permanent total disability.
[2] Or for which liability was determined and addressed in a prior proceeding.

3

value by the Commission. In Ryan's 2011 case, the Commission determined that his pre-existing injuries were worth a total of 278 weeks; his primary knee injury was worth 46.4 weeks; his primary spine injury was worth 80 weeks; and the "synergistic effect" of all of these injuries combined warranted an additional 60.66 weeks of compensation. Ryan's employer was liable for his primary injuries and the Fund provided 60.66 weeks of compensation for the "synergistic effect."

The question now is whether a portion of the 60.66 weeks of "enhanced PPD" can be considered part of the primary injury under the 2013 amendments to the Fund. Under the current version of the Fund, Ryan is entitled to permanent total disability payments from the Fund only if he can establish two things: 1) he has a "medically documented preexisting disability equaling a minimum of fifty weeks of permanent partial disability compensation" that is "a direct result of a compensable injury as defined in section 287.020[,]"[3] and 2) he "sustains a subsequent compensable work-related injury that, when combined with the preexisting disability … results in a permanent total disability[.]"  Section 287.220.3.

In my opinion, Ryan's 2011 shoulder injury did not equal fifty weeks of permanent partial disability compensation. Ryan settled his primary shoulder injury with his employer for 46.4 weeks. This settlement was memorialized in the Commission's decision and was the amount paid by Ryan's employer. That is the value of his shoulder injury. The enhanced PPD award he received compensated him for a different injury; namely, the injury incurred when the shoulder injury combined with Ryan's numerous other pre-existing injuries. These injuries are distinct from one another and cannot be combined. In fact, the Fund is based on the premise that

---

[3] Section 287.220 provides for other conditions that could be met, none of which are applicable here.

enhanced PPD cannot be attributed to any single disability. That lack of attribution is a major reason for the existence of the Fund.

I am unmoved from this position by the principal opinion's statutory construction. There is no need to resort to the dictionary to understand the legislature's use of the word "equaling" in § 287.220.3. Nothing about the use of the word "equaling" in this context suggests that the legislature intended that the Commission should engage in an undefined mathematical equation in order to add an enhanced PPD award to the primary injury award. While the word equaling may evoke mathematical formulas, it is apparent that, in the context of this statute, a disability "equals" a minimum of fifty weeks of partial disability compensation when the injury is worth fifty weeks of disability compensation.

I also disagree with the principal opinion that the enhanced PPD award is a "direct result" of Ryan's 2011 shoulder injury. The only disability that is a direct result of the shoulder injury is the 46.4 weeks of disability that Ryan and the Commission agreed on. The enhanced PPD is, at best, an indirect result of Ryan's shoulder injury. The existence of the shoulder injury was a necessary condition to Ryan's receipt of enhanced PPD, but it was not sufficient on its own. Enhanced PPD liability under the Fund was a recognition that multiple disabilities may combine to create one larger disability. The disability addressed by enhanced PPD, therefore, is not something that can be assigned to any one body part. If any portion of the enhanced PPD could have been assigned to the shoulder specifically, then Ryan should have made that argument when litigating his 2011 injuries and that amount should have been paid by his employer.

Finally, the principal opinion's reading of § 287.220.3 is at odds with its own statement of the purpose of the 2013 amendments to the Fund. The principal opinion correctly notes that the law was changed to address the Fund's persistent insolvency. The principal opinion also

5

correctly notes that the legislature directed the courts to strictly construe the provisions of the Fund. Section 287.800. Nonetheless, the principal opinion reads the statute in a way that broadens Fund liability. While I agree with the principal opinion that Ryan has suffered a number of work-related injuries rendering him significantly physically disabled, the facts of this case and strict construction of the applicable law prevent me from finding Fund liability.

For these reasons, I would affirm the Commission's decision.

_____
John P. Torbitzky, P.J.